**WESTERN SOUTHERN LIFE INSURANCE CO., Appellant–Defendant,**

v.

**W. Charles ACTON and William H. Mullis, Appellees–Plaintiffs.**

No. 47A01–0204–CV–121.

Court of Appeals of Indiana.

Dec. 11, 2002.

Keith R. Conrad, Frost Brown Todd LLC, New Albany, IN, Attorney for Appellant.

William H. Mullis, William H. Mullis, P.C., Mitchell, IN, Attorney for Appellees.

## OPINION

SULLIVAN, Judge.

Appellant, Western Southern Life Insurance Co. ("Western"), appeals from the trial court's grant of judgment in favor of appellees W. Charles Acton and William Mullis, acting as personal representatives of the estate of Margaret C. (Acton) Rayhill (collectively "the Estate"). Upon appeal, Western claims that the trial court improperly interpreted the language of a life insurance contract and awarded the Estate an amount which exceeded the value of the policy.

We reverse and remand.

On October 12, 1925, Warren Acton purchased a life insurance policy for his daughter Margaret C. Acton, who was then less than one year of age. Mr. Acton purchased this policy from the Public Savings Insurance Company of America. The policy was a "twenty-year payment life policy" payable upon death only and had a weekly premium of thirteen cents. Appellant's Appendix at 11. Included in the policy was a clause titled "Paid–Up Policy," which read in part as follows:

> "After the premiums on this Policy have been fully paid for five or more years, the Company, upon written application made by the Insured, within thirteen weeks next after the first default in payment of premium, on blanks furnished by the Company and upon legal surrender of this Policy and the premium receipt book pertaining thereto, will issue a non-participating paid-up life policy as specified in the table below.

> In computing paid-up values due allowance will be made for each completed quarter of a year's premiums paid over and above the full number of years indicated below." Appellant's Appendix at 10.

Immediately following this clause was a table for determining the value of the policy based upon the age of the insured at the age they were insured and the number of years premiums had been paid. Under this table was the following sentence, the interpretation of which is at issue in this appeal: "The values in the above table are computed according to the American Experience Table of Mortality with interest at the rate of three and one-half per cent per annum." *Id.* The policy at issue was paid-up on December 1, 1937, twelve years after the policy was issued.

On January 21, 2001, Margaret (Acton) Rayhill died in Lawrence County. The personal representatives of her estate discovered the insurance policy and presented it for payment to Western, the successor in interest to the Public Savings Insurance Company of America. Western denied payment, claiming that the policy had been surrendered in exchange for $6.02. The Estate eventually filed a small claims suit against Western. The trial court entered judgment in favor of the Estate in the amount of $867.44 [1] plus costs of $39.

■ In interpreting an insurance contract, we use the same rules of construction and interpretation which apply to other contracts. *Jones v. Western Reserve Group/Lightning Rod Mut. Ins. Co.*, 699 N.E.2d 711, 714 (Ind.Ct.App.1998), *trans. denied.* Where a policy's language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning. *Id.* Courts will not deem a contract's language ambiguous simply because the parties favor a different interpretation. *Id.* Moreover, we must interpret the language of a contract so as

not to render any words, phrases, or terms ineffective or meaningless. *Bowen v. Monroe Guar. Ins. Co.*, 758 N.E.2d 976, 980 (Ind.Ct.App.2001). We may not rewrite an insurance contract. *Id.* Upon appeal, the review of the interpretation of an unambiguous contract is de novo. *McLinden v. Coco*, 765 N.E.2d 606, 612 (Ind.Ct. App.2002). If the contract is ambiguous or uncertain in its terms, and if the meaning of the contract is to be determined by extrinsic evidence, its construction is a matter for the trier of fact. *Id.*

Upon appeal, Western claims that the trial court's judgment exceeded the insurance policy limits. Specifically, Western claims that the policy had a limit of $100—which is what the contract lists as the value of the policy when issued to a child less than one year old and after twelve years of premiums have been paid.

■ The Estate first claims that Western has waived its appellate argument by failing to present it to the trial court. Quoting *Marshall County Redi–Mix, Inc. v. Matthew*, 458 N.E.2d 219, 222 (Ind. 1984), the Estate asserts that "[u]pon an appeal the parties ought to be held to the interpretation which they put upon the agreement below, and to the theory upon which they tried the case." According to the Estate, Western relied upon only one theory at trial—that the policy was no longer valid because Ms. Rayhill had surrendered the policy in 1988 in exchange for $6.02. Only now, the Estate claims, does Western argue that the value of the policy should not have included interest.

In its reply brief, Western responds to this claim of waiver by referring to several points in the trial record in which it argued that the policy did not provide for an addi-

1. This amount would appear to represent the $100 paid-up value of the policy claimed by the Estate, plus 3.5% interest per year from 1937 to 2000.

tional 3.5% percent per year interest to be added to the value of the policy listed in the table. In response to the Estate's claim that Western failed to object to a plaintiff's exhibit showing the value of the policy with the interest applied, Western refers us to the language its counsel used at trial when this exhibit was offered:

"Your Honor, the only objection we have is that ... what I don't want the Court to be mislead, [sic] when they look at this later is that this is ... Mr. Mullins [sic] ... [o]f how he ... interprets the insurance policy and how he would calculate. And basically i[t] shows what if you take a hundred dollars ($100.00) in 1937 and take it and compute it at three and a half (3 1/2) percent interest ... [w]hat that would be worth today[,] and we don't have any objection to that, we just have to objection [sic] to the characterization of its value." Transcript at 24.

We do not agree with the Estate that this is tantamount to an admission that the value of the policy would include 3.5% interest until payable. The objection indicates that Western did not object to the exhibit inasmuch as it represented what the Estate believed the current value of the policy to be. However, it also indicates that Western did not agree with the exhibit's contents as representing the actual value of the policy.

Western's witness, Carolyn Saenz, also testified that "this is not the type of policy where you put in money and it accrues." Tr. at 46. In addition, the Estate asked Ms. Saenz upon cross-examination, "do you dispute that there should have been three and one half ... percent interest on something to be added to the policy?" Ms. Saenz responded, "We would dispute that, yes."[2] Tr. at 55.

Western further notes that during closing argument, it specifically argued that the 3.5% interest mentioned in the policy did not continue to accrue until the policy was payable:

"There's been a mischaracterization of what that table reads and if you take the policy and look at it[,] what that table shows in the one hundred dollars ... at the twelve years ... when the ... insured was under ... one ... year of age, means that after paying twelve ... years of a premium, if she had died, the value would have been one hundred dollars.... If you read the chart[,] that continues to grow the more years that she pays the premium[,] the maximum being of two hundred and fifty dollars.... *There's nothing in the plain language of the contract that's going to say there is a value of two hundred and fifty dollars ... which is going to grow three point five ... percent per annum.* That three point five percent ... percent [sic] annum is a term explained to you how they come up with those numbers that they do in case you die before your premiums are all paid. The maximum amount of this policy is two hundred and fifty dollars...." Transcript at 64–65.

This is essentially the same argument that Western makes upon appeal. It claims now, as in closing arguments, that the reference to 3.5% interest does not mean that interest was to accrue until the policy became payable; instead it was an explanation of how the table was calculated.

Based upon our review of the record, we do not agree that Western has waived its appellate argument by failing to present it to the trial court. To be sure, the record indicates that Western's main argument at

---

**2.** Ms. Saenz also testified that "it is possible that a minor interest payment could be made on this policy, but this policy does not guarantee interest rates." Tr. at 46.

trial was that the policy had been surrendered in exchange for $6.02.[3] Nevertheless, Western also argued at trial that the reference to 3.5% interest did not mean that such was to accrue until the policy was paid, and this was sufficient to avoid waiver of the argument upon appeal.

■ We now return to a discussion of the merits of the case. As noted, Western claims that the trial court erred by including 3.5% interest per year in the value of the policy. The Estate claims, and the trial court agreed, that the reference to interest requires interest to be paid upon the value of the policy at a rate of 3.5% per year until the policy becomes payable.

The relevant portion of the policy reads, "The values in the above table are computed according to the American Experience Table of Mortality with interest at the rate of three and one-half per cent per annum." Appellant's Appendix at 10. This language is clear and unambiguous. It does not say that interest shall accrue at the rate of 3.5% per year until the policy becomes payable, i.e. the death of the insured. Instead, it simply describes the method used to arrive at the values listed in the table contained in the contract. There is no provision calling for interest to continually accrue at this rate until the policy is payable. Therefore, we conclude that the trial court improperly included interest in the judgment in favor of the Estate.

The judgment of the trial court is reversed and the cause is remanded with instructions to reduce the judgment to $100 plus the costs already awarded by the trial court in the amount of $39.

In a separate argument, the Estate claims that Western's appeal is frivolous and requests appellate attorney fees. *See*

Ind. Appellate Rule 66(E). Appellate Rule 66(E) allows this court to assess damages if an appeal is frivolous or in bad faith. An award of damages under this rule is discretionary and may be ordered when an appeal is replete with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Lutz v. Fortune*, 758 N.E.2d 77, 85 (Ind.Ct.App.2001), *trans. dismissed.* However, to avoid chilling an attorney's pursuit of novel theories or remedies, such damages should be awarded only when the contentions upon appeal are utterly devoid of all plausibility. *Id.* The Estate makes an impassioned argument that Western has brought this appeal knowing that it has waived its appellate argument, and that this, combined with their original unwillingness to honor the policy, justifies appellate attorney fees. Otherwise, the Estate argues, their victory at trial, and their presumed victory upon appeal, is hollow.

However, we have not found Western's argument to be waived for purposes of appeal. We also agree with its interpretation of the policy language at issue upon appeal. Therefore, we cannot say that this appeal is frivolous or in bad faith, and we decline to grant the Estate appellate attorney fees pursuant to Rule 66(E).

Nevertheless, we do recognize that upon appeal of a small claims case, the appellee, even if successful, may have achieved a Pyrrhic victory in that the costs associated with defending the appeal may well exceed the value of the judgment. In such a situation, if the appellant's argument were frivolous, appellate attorney fees might be particularly appropriate. Be that as it may, such is not the case here. Western has appealed what it believed to be an excessive judgment against it, and given

---

**3.** Western has abandoned this argument upon appeal.

that we reverse the judgment of the trial court, we cannot fault them for doing so.

BAILEY and MATHIAS, JJ., concur.