**Chad KELLY and Shawn Tyree,**
**Appellants–Plaintiffs,**

v.

**Terri HAMILTON, Appellee–Defendant,**

**and**

**Allstate Insurance Company,**
**Appellee/Garnishee–**
**Defendant.**

No. 85A05–0401–CV–53.

Court of Appeals of Indiana.

Nov. 4, 2004.

Tom Belleperche, Blackburn & Green, Fort Wayne, IN, Attorney for Appellants.

Patrick J. Dietrick, Collignon & Dietrick, P.C. Indianapolis, IN, Attorney for Appellee Allstate Insurance Company.

## OPINION

SULLIVAN, Judge.

Appellants–Plaintiffs, Chad Kelly and Shawn Tyree (collectively "the Plaintiffs"), challenge the trial court's grant of summary judgment in favor of Appellee–Garnishee Defendant, Allstate Insurance Company ("Allstate"). In challenging the propriety of the summary judgment, the Plaintiffs present two issues for our appellate review, which we restate as: (1) whether Allstate is collaterally estopped from claiming coverage defenses for the first time at the proceeding supplemental stage when it did not appear to defend its insured, Terri Hamilton; and (2) whether the Allstate policy covered the damages recovered by the Plaintiffs through the judgment against Allstate's insured.

We affirm.

The relevant facts are essentially undisputed. Kelly had purchased a Chevrolet Cavalier from Shepard's Chevrolet in Huntington, Indiana. Shortly after Kelly purchased the car, it developed an oil leak, and he took it to the dealership for repairs. While the car was in for repairs, Kelly rented a Ford Tempo from Kaylee Rentals.[1] The rental agreement between Kelly and Kaylee Rentals prohibited operation of the vehicle by anyone under the age of twenty-one. During the late night hours of April 17, 1997 and the early morning hours of April 18, 1997, Kelly was driving the rented Ford in Wabash County with Terri Hamilton, Shawn Tyree, and Robin

---

1. The Plaintiffs claim that the business relationship between Kaylee Rentals and Shepard Chevrolet is unknown, whereas Allstate refers to both as "Shepard's Chevrolet/Kaylee Leasing Co., ... a car dealership...." Appellee's Brief at 1. This minor disagreement does not affect the resolution of this case, and we will refer to the businesses separately for purposes of this opinion.

Sloan as passengers. Shortly after midnight, Kelly stopped the car and let Hamilton drive. While driving on State Road 524, Hamilton began to drive at a speed in excess of the posted thirty miles per hour speed limit. She eventually lost control of the car going through a curve in the road, causing the vehicle to leave the road and crash into one or more trees. Kelly and Tyree were injured as a result.

At the time of the accident, Hamilton was nineteen years old and lived with her mother, who had an automobile insurance policy with Allstate. The Allstate policy names "Terri" as one of the "driver(s) listed." Appendix at 66. The policy provides that:

> "Allstate will pay for all damages an insured person is legally obligated to pay-because of bodily injury or property damage meaning:
> 1. bodily injury, sickness, disease or death to any person, including loss of services; and
> 2. damage to or destruction of property, including loss of use.
>
> Under these coverage [sic], your policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured auto.
>
> We will defend an insured person sued as a result of an auto accident, even if the suit is groundless or false. We will choose counsel. We may settle any claim or suit if we believe it is proper."

Id. at 71.

The policy defined "Insured Persons" as:
> "While using your insured auto:
> a) you,
> b) any resident, and
> c) any other person using it with your permission." Id.

The policy in turn defined "Insured Autos" as including, "A non-owned auto used by you or a resident relative with the owner's permission." Id.

The Plaintiffs retained legal representation in an effort to recover damages for the injuries they received during the accident. Their counsel notified Allstate of their claims against Hamilton. By a letter dated July 18, 1997, Allstate disclaimed coverage with respect to the policy issued to Hamilton's mother. On April 29, 1998, the Plaintiffs' counsel notified Allstate that they had filed a complaint against Hamilton.[2] On May 8, 1998, Allstate again gave written notice to Hamilton that it was disclaiming coverage for the loss and would not provide a defense. Hamilton filed her answer on June 26, 1998.

Thereafter, on March 27, 2000, the Plaintiffs and Hamilton filed a Stipulation of Facts, and the Plaintiffs submitted a motion for entry of judgment against Hamilton. Based in part upon this stipulation, the trial court entered judgment in favor of the Plaintiffs, awarding damages to Tyree in the amount of $50,000 and to Kelly in the amount of $300,000. On April 1, 2002, the Plaintiffs filed a verified motion for proceedings supplemental naming Allstate as a garnishee defendant. On May 28, 2002, Allstate filed its response to the motion for proceedings supplemental, denying that it was obligated to satisfy any judgment against Hamilton. On September 12, 2003, the Plaintiffs filed a motion for summary judgment. Allstate filed its own motion for summary judgment on September 13, 2003. After both parties filed responses to the respective motions, the trial court held a summary judgment hearing on December 11, 2003. On December 30, 2003, the trial court granted summary judgment in favor of Allstate.

---

**2.** The complaint for damages was actually filed on April 30, 1998.

Upon appeal from a trial court's ruling on a motion for summary judgment, our standard of review is well settled. Summary judgment is proper if the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1230 (Ind.2002). We construe all facts and reasonable inferences drawn from those facts in a light most favorable to the nonmoving party. *Bruce*, 762 N.E.2d at 1230. Upon appeal, the non-moving party has the burden of proving that the grant of summary judgment was erroneous, but we review the trial court's decision carefully to ensure that the nonmovant was not improperly denied his day in court. *Id.* Here, the relevant facts are undisputed; thus, the question before us is one of pure law. In such instance, we give no deference to the trial court's decision. *See Foreman v. Jongkind Bros., Inc.*, 625 N.E.2d 463, 467 (Ind.Ct.App.1993).

The first issue we address is whether Allstate is collaterally estopped from raising for the first time at the proceedings supplemental the question of whether Hamilton is covered by the Allstate policy. As explained by our Supreme Court in *Bruce, supra:*

"Collateral estoppel, also referred to as 'issue preclusion,' describes the binding effect of a previous judgment regarding a particular issue on the parties and their privies in a subsequent action. 'The doctrine of collateral estoppel applies to insurance contracts and an insurer is ordinarily bound by the result of litigation to which its insured is a party, so long as the insurer had notice and opportunity to control the proceedings.'

An insurer may avoid the effects of collateral estoppel by: (1) defending the insured under a reservation of rights in the underlying tort action, or (2) filing a declaratory judgment action for a judicial determination of its obligations under the policy. Either of these actions will preserve an insurer's right to later challenge a determination made in the prior action.

An insurer may also elect not to defend an insured party in a lawsuit if, after investigation of the complaint, the insurer concludes that the claim is 'patently outside the risks covered by the policy.' Such a course is taken at the insurer's peril because the insurer will be 'bound *at least* to the matters *necessarily determined* in the lawsuit.'" 762 N.E.2d at 1230–31 (citations omitted).

■ In the present case, the Plaintiffs claim that Allstate may not, at this stage of the proceedings and after having chosen not to defend Hamilton in the underlying action, raise the question of whether their claims against Hamilton are covered by Allstate's policy. Allstate contends that they are not estopped from raising a coverage defense because a determination of this issue was not necessary to support the trial court's underlying judgment against Hamilton. We agree with Allstate.

In *Progressive Cas. Ins. Co. v. Morris*, 603 N.E.2d 1380 (Ind.Ct.App.1992), the driver of a motorcycle struck a semi-tractor head-on, killing the motorcyclist and injuring the occupants in the truck. The occupants of the truck then sued the estate of the motorcyclist, alleging negligence. Progressive, after being given notice of the action, failed to defend the estate of their insured, and a default judgment was entered against the estate. In the subsequent damages hearing, the trial court concluded that the accident was the direct and proximate result of the motorcyclist's negligence. When Progressive was named as a garnishee defendant, it asserted as an affirmative defense that the motorcyclist's

actions were intentional and therefore not covered by its insurance policy. The *Morris* court held that the issue of negligence had been decided by the trial court and that collateral estoppel prevented Progressive from raising its defense in the proceedings supplemental. *Id.* at 1383.

A similar result was reached in *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897 (Ind.Ct.App.1992), *trans. denied.* In *Metzler*, the driver of a semi-tractor, after arguing with his girlfriend at a bar, drove his truck into the bar, killing one person and injuring several others. Two of the injured individuals sued the driver and obtained a default judgment. The trial court held a damages hearing and found in favor of the plaintiffs, who commenced proceedings supplemental against Liberty Mutual, the driver's insurer. Liberty Mutual tried to claim that the driver's actions were intentional and outside the scope of their policy's coverage. Upon appeal, the *Metzler* court held that the issue of whether the driver's actions were intentional versus negligent had been determined by the trial court in the underlying tort action, and thus Liberty Mutual was estopped from raising this issue for the first time in the proceedings supplemental. *Id.* at 902.

The outcome of the case at bar is governed by the case of *Foreman, supra,* wherein several homeowners sued the defendant homebuilder Jongkind because the roofs of their homes leaked. Indiana Insurance, who insured Jongkind, received notice of the suit, but following an investigation, refused to defend Jongkind upon grounds that there was no policy coverage for damages caused by Jongkind's poor workmanship. Jongkind retained its own counsel and entered into an agreed judgment with the plaintiffs without notice to

Indiana Insurance. The plaintiffs eventually instituted proceedings supplemental against Indiana Insurance, who claimed the damages were not covered under the policy.[3] After discussing the *Morris* and *Metzler* decisions, the *Foreman* court concluded that the default judgment entry did determine Jongkind's fault as well as the nature and amount of damages. Thus, Indiana Insurance was bound by that finding since it failed to defend, appear under a reservation of right, or file for declaratory judgment in the action below. 625 N.E.2d at 469. Had Indiana Insurance denied in the proceeding supplemental that Jongkind was at fault, it would have been estopped from raising such issues. *Id.* However, Indiana Insurance did not deny that Jongkind was at fault.

> "Instead, Indiana Insurance denied that the nature of damages incurred by the . . . plaintiffs as outlined in the default judgment *were covered by the policy.* This *issue* of whether there was any duty upon Indiana Insurance to indemnify Jongkind under the insurance policy was not decided by the default judgment. . . . Therefore . . . collateral estoppel did not apply and Indiana Insurance could raise its policy defenses in the consolidated proceedings supplemental . . . actions for the first time." *Id.*

The rationale of these cases was followed by our Supreme Court in *Bruce, supra,* wherein the insured operated a day care center. The insured's husband was convicted of molesting one of the children at the center. The molested child sued the insured and her husband claiming negligence and premises liability. The insured had a homeowner's policy issued by State Farm. State Farm received notice of the suit but denied coverage. The plaintiff

---

**3.** Indiana Insurance also filed a declaratory action against Jongkind, which was consolidated with the proceeding supplemental action. *See Foreman,* 625 N.E.2d at 465.

and insured eventually entered into an agreed judgment which the trial court accepted. The plaintiff then instituted proceedings supplemental against State Farm, which claimed that the policy did not cover its insured's liability. Upon appeal, the Court noted that if the insurer elects not to defend an insured party, such action is taken at the insurer's peril because the insurer will be bound at least to the matters necessarily determined in the lawsuit. 762 N.E.2d at 1231. At issue in *Bruce* was what was "necessarily determined." The insurance policy specifically excluded from coverage claims made or suit brought against any insured by any person who was in the care of any insured because of child care services provided by or at the direction of the insured. *Id.* at 1229. In the agreed judgment tendered to the court, the plaintiff and insured agreed that the occurrence which harmed the plaintiff was not related to the insured's operation of the child care facility. The Court held that these characterizations were unnecessary to sustain the plaintiff's claim for damages regarding negligence and premises liability. *Id.* at 1231. The only apparent purpose of such statements was to isolate the molestation from the child care activities. *Id.* The plaintiff's claim did not address State Farm's contractual obligation under the policy and the statement in the agreed judgment was unnecessary to resolve the complaint. *Id.* at 1232. "It was thus tantamount to dictum, and State Farm should not have been estopped from challenging it during proceedings supplemental." *Id.*

█ In the case at bar, Allstate denied that its policy covered the claims against Hamilton. In order not to be bound by any judgment rendered against Hamilton, Allstate had the option of defending Hamilton under a reservation of rights in the underlying tort action or filing a declaratory judgment action for a judicial determination of its obligations under the policy. *See Bruce,* 762 N.E.2d at 1231. Instead, Allstate chose the option of not defending Hamilton. Allstate took such a course at its own peril because it is now bound at least to the matters necessarily determined in the lawsuit. *See id.*

The issue which Allstate raised during the proceedings supplemental is whether its policy covered the claims against Hamilton. The question before us is whether this issue was necessarily determined by the underlying judgment entered against Hamilton. We hold that it was not. Like the judgment entered in *Foreman,* the issue of whether there was any duty by the insurer to defend the insured was not at issue in the complaint, nor was it decided by the entry of judgment against Hamilton. Therefore, Allstate was not collaterally estopped from raising the issue of whether the claims against Hamilton were covered by the Allstate policy.

█ The next issue to be decided is whether the trial court properly determined that the claims brought against Hamilton were not covered by the Allstate policy. This requires us to interpret the policy language. In interpreting an insurance contract, we use the same rules of construction and interpretation which apply to other contracts. *Western Southern Life Ins. Co. v. Acton,* 779 N.E.2d 941, 943 (Ind.Ct.App.2002), *trans. denied.* Where a policy's language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning. *Id.* We will not deem a contract's language ambiguous simply because the parties favor different interpretations. *Id.* Moreover, we must interpret the language of a contract so as not to render any

words, phrases, or terms ineffective or meaningless. *Id.* Neither may we rewrite an insurance contract. *Id.* Upon appeal, the review of the interpretation of an unambiguous contract is de novo. *Id.* If the contract is ambiguous or uncertain in its terms, and if the meaning of the contract is to be determined by extrinsic evidence, its construction is a matter for the trier of fact. *Id.* Neither party here claims that the contract language is ambiguous.

■■■ Neither party disputes that Hamilton was an "insured person" under her mother's policy with Allstate. But Allstate's policy covers an insured person only while using an "insured auto." The dispute here is whether the Ford rented by Kelly and driven by Hamilton was an insured auto under the policy. The policy defined "Insured Autos" to include "[a] non-owned auto used by you or a resident relative *with the owner's permission.*" Appellant's App. at 71 (emphasis supplied). Regardless of whether Hamilton was driving the Ford with the permission of Kelly, the lessee, Allstate argues that Hamilton was not operating the Ford with the permission of the owner-lessor, Kaylee Rentals.

Here, the rental agreement between Kelly and Kaylee Rentals expressly stated, "The operation of the vehicle by any driver under 21 years of age is prohibited under paragraphs 1 and 5 on page 2 of this agreement." Appellant's App. at 158. Paragraph 1 on the second page of the rental agreement stated in part, "In no event shall the vehicle be used, operated or driven ... by any person who is less than 21 years of age ... or by any person except Lessee, or a qualified licensed driver 21 years or older named by Lessee on Page 1...." *Id.* at 159. Thus, Allstate claims that an express restriction on the scope of the permission given by Kaylee Rentals to Kelly prohibited the operation of the vehicle by Hamilton. The Plaintiffs argue that these provisions in the rental agreement between Kelly and Kaylee Rentals cannot operate to limit the policy between Allstate and Hamilton.

In support of their argument, the Plaintiffs rely upon *Raines v. Auto–Owners Ins. Co.,* 703 N.E.2d 689 (Ind.Ct.App.1998), *trans. denied.* In that case, Mr. and Mrs. Barbee had automobile insurance through Auto–Owners. The policy contained language providing that a substitute vehicle would be covered while used temporarily. Following an accident involving their regular vehicle, the Barbees rented a car from Enterprise. The rental agreement between Mrs. Barbee and Enterprise designated the Barbees' daughter, Shirley Myers, as an additional driver of the rented car. The Barbees never drove the car, preferring Myers to drive it for them. Myers later permitted her son, Anthony Raines, to drive the rented car to deliver medicine to the Barbees. Raines also had permission from his mother to drive the car to go swimming following his delivery. After the errand was completed, Raines allowed his friend, Joshua Learman, to drive the car. Learman wrecked the car, causing injuries to himself and Raines. Auto–Owners subsequently filed a declaratory action seeking to establish that it was not liable to satisfy a judgment which Raines had obtained against Learman, arguing that Learman was not a permissive driver under the terms of the "omnibus clause" contained in the Barbees' policy as affected by the rental agreement between the Barbees and Enterprise. The omnibus clause in the policy declared that an "insured" under the policy included "any person using the automobile ... provided the actual use thereof is with the permission of the named insured or ... with the permission of an adult member of the household...." *Id.* at 691. The trial court

granted summary judgment in favor of Auto–Owners.

Upon appeal, this court reversed and remanded, noting that the designated evidence revealed that Mrs. Barbee never told her daughter not to let anyone else drive the rented car. *Id.* at 693. The evidence also revealed that Myers had previously allowed Learman to drive her vehicles, believed him to be a good driver, never told her son, Raines, not to let anyone else drive, and would have permitted Learman to drive had she been asked. *Id.* From this, the *Raines* court concluded that a reasonable trier of fact could infer that Learman had Mrs. Barbee's or Myers's implied permission to drive the rented car. *Id.*

The *Raines* court also addressed Auto–Owners' argument that the terms of the rental agreement operated as an express use restriction. The agreement stated that additional drivers were not permitted without Enterprise's approval, and Myers was the only listed additional driver. *Id.* Auto–Owners argued that this language established that Myers had no authority to allow anyone else to use the car. In support of this argument, Auto–Owners relied upon *Standard Mut. Ins. Co. v. Pavelka*, 580 F.Supp. 224 (S.D.Ind.1983), wherein an insured parent allowed his son to drive the vehicle, but with the express restriction that he could not allow anyone else to drive. The policy in *Pavelka* defined an insured person as including " '[a]ny other person using such automobile with the permission of the named insured, provided his actual operation . . . thereof is within the scope of such permission.' " *Raines*, 703 N.E.2d at 693 (quoting *Pavelka*, 580 F.Supp. at 226). The *Raines* court held

that the language in the policy at issue before them was different than that at issue in *Pavelka* in that the latter provided that the use must be within the scope of such permission, whereas the Auto–Owners policy did not. 703 N.E.2d at 694. Moreover, Auto–Owners provided no authority for its contention that such permission can be constrained or limited by a separate contract such as the Enterprise rental agreement. *Id.* The court wrote:

> "Auto–Owners would have us hold that because the vehicle was a rental car, a stranger to the contract (insurance policy) between Auto–Owners and Barbee can interfere with that contract. Yet the unambiguous terms of that contract provide that '[w]hile the automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded by this policy with respect to such automobile applies with respect to another automobile not owned by the named insured while temporarily used as a substitute.' We will not hold for the first time today that as a matter of law, the Enterprise contract is tantamount to an express restriction such as the one in *Pavelka*." *Raines*, 703 N.E.2d at 694.[4]

In the present case, the Plaintiffs claim that Kelly's rental agreement with Kaylee Rentals, which expressly forbids anyone under the age of twenty-one from driving the rented car, cannot operate to limit Kelly's permission to allow Hamilton to drive the rented Ford. We see a subtle yet important distinction between *Raines* and the case at bar.

In *Raines*, the policy between the Barbees and Auto–Owners covered the rented

---

4. Upon appeal after remand, this court determined that Learman was a permitted driver of the Barbees' rental car and entitled to coverage under the Barbees' policy, reversing the trial court's judgment. *See Learman v. Auto Owners Ins. Co.*, 769 N.E.2d 1171 (Ind. Ct.App.2002), *trans. denied.*

substitute car in the same manner as the Barbees' own car. That policy also defined an insured driver to include those using the car provided that the actual use was with the permission of the named insured or an adult member of the insured's household. The *Raines* court held that the rental agreement between Barbee and Enterprise could not operate as an express restriction on the Barbees' ability to grant permission to others to use the rented car, at least as far as their insurance policy with Auto–Owners was concerned. In other words, where the insured's policy covered drivers using a covered auto with the *insured's* permission, a contract between the insured and a third party could not act to limit the insured's permission for purposes of the policy. Here, we are not dealing with Kelly's insurance policy or the power of such a policy to limit Kelly's ability to grant permission to drive his car, or a substitute, under an omnibus clause to his policy— what the court in *Raines* rejected. Nor are we faced with a contract which limits Hamilton's ability to grant permission to others to drive an auto insured under her policy.[5] Instead, we are dealing with Allstate's policy with Hamilton, which itself defines an insured auto to include a non-owned vehicle driven by Hamilton "with the *owner's* permission." Appellant's App. at 71 (emphasis supplied). The owner of the rented Ford was Kaylee Rentals.[6] Kaylee Rentals explicitly forbade

anyone under the age of twenty-one to drive the car, and Kelly agreed to this restriction.

In this sense, we are faced with a situation similar to that faced by the court in *State Farm Mut. Auto. Ins. Co. v. Gonterman,* 637 N.E.2d 811 (Ind.Ct.App.1994), wherein the daughter of the insureds permitted her friend, Gonterman, to drive her parents' car despite being specifically told by her parents that no one else was permitted to drive it. Gonterman subsequently had an accident in the car, injuring another driver. State Farm brought a declaratory action seeking a determination that Gonterman was not insured under the omnibus clause of their policy. The *Gonterman* court acknowledged that Indiana follows the "liberal rule" when interpreting the scope of coverage under an omnibus clause, which rule has been defined as follows:

> " 'one who has permission of an insured owner to use his automobile continues as such a permittee while the car remains in his possession, even though that use may later prove to be for a purpose not contemplated by the insured owner when he entrusted the automobile to the use of such permittee.' " *Id.* at 814 (quoting *Manor v. Statesman Ins. Co.,* 612 N.E.2d 1109, 1113 (Ind.Ct.App. 1993)).[7]

However, the *Gonterman* court noted that when the owner places restrictions on use

**5.** As earlier noted, the policy was actually with Hamilton's mother, with Hamilton as a named driver under the policy.

**6.** The Plaintiffs briefly argue that Kelly was the "owner" of the right to use the rented Ford. This argument is not fully developed, and the Plaintiffs cite no authority for such a proposition. We will not develop this argument for them. *See* Ind. Appellate Rule 46(A)(8)(a). Regardless, the policy language refers to a non-owned auto used with the owner's permission. This plainly means the

owner of the non-owned auto. Moreover, even if Kelly were to be considered the "owner" of the right to use the car, the extent of this right was expressly restricted by the rental agreement language forbidding the use of the car by anyone less than twenty-one years old.

**7.** The *Manor* court was in turn quoting *Arnold v. State Farm Mut. Auto. Ins. Co.,* 260 F.2d 161, 165 (7th Cir.1958).

of the vehicle, violations of such use restrictions may terminate the initial permission. 637 N.E.2d at 814. When the owner of the vehicle places such express restrictions on the vehicle's use, the focus is not upon whether the operator deviated from the contemplated use, but whether the operator's use of the vehicle was restricted in the first place. *Id.* "In a coverage dispute, permissive use cannot be implied when an express restriction on the scope of permission prohibits the use at issue." *Id.* Thus, the court held that Gonterman's use was outside the scope of the daughter's permission to use the car, and that he did not have implied permission from the insureds. *Id.*

Here, Kaylee Rentals, as did the parents in *Gonterman,* placed express restrictions on Kelly's use of the vehicle. Kelly's subsequent grant of permission to Hamilton to use the car was outside the scope of his permission to use the car in the first place. Thus, we conclude that Hamilton was not driving with the permission of the owner of the rented Ford. As such, she was not driving an "insured auto" as defined in the Allstate policy. The trial court did not err in granting summary judgment in favor of Allstate.

The judgment of the trial court is affirmed.

NAJAM, J., and BARNES, J., concur.