ATTORNEYS FOR APPELLANT ATTORNEY FOR APPELLEE

Julia Blackwell Gelinas Julie L. Michaelis
Hugh E. Reynolds, Jr. Wooden & McLaughlin LLP
James Dimos Indianapolis, IN
Locke Reynolds LLP
Indianapolis, IN

 IN THE

 SUPREME COURT OF INDIANA

STATE FARM FIRE & CASUALTY )
COMPANY, )
 )
 Appellant ) In the Supreme Court
 (Garnishee Defendant Below), ) No. 53S01-0102-CV-00099
 )
 v. )
 )
T.B., ) In the Court of Appeals
a minor by her parents and next ) No. 53A01-9908-CV-266
friends, GEORGE BRUCE and CATHY )
BRUCE, )
 )
 Appellees (Plaintiffs Below). )
___________________________________)
 )
MURL L. DOBSON and VICKI L. )
DOBSON, )
 )
 Defendants below. )

 APPEAL FROM THE MONROE CIRCUIT COURT
 The Honorable David L. Welch, Judge
 Cause No. 53C06-9705-CT-676

 February 21, 2002

SHEPARD, Chief Justice.

 State Farm Fire and Casualty Company declined to represent an insured
homeowner in a suit brought by a child whom the insured’s husband molested
during daycare in the insured’s home. The insured agreed to a consent
judgment of $375,000, with the stipulation that none of it would be
collected from the homeowner, and assigned all policy rights to the child.
The trial court entered the judgment. It later granted summary judgment in
favor of the child in proceedings supplemental against State Farm.

 State Farm appeals, claiming that the trial court erred when it (1)
estopped State Farm from raising the childcare exclusion in the homeowner’s
policy as a defense, and (2) awarded contractual damages in an amount
exceeding the limits of the homeowner’s policy. We agree.

 Facts and Procedural History

 Vicki Dobson operated a daycare center in her home in Bloomington,
Indiana, for about twenty-five years. T.B was one of her charges. On
April 4, 1996, Dobson left T.B. and three other children with her husband
Murl, while Dobson went across the street to care for her mother-in-law.
Murl molested T.B. and was later convicted of child molesting.

 About a year later, T.B. sued the Dobsons on premises liability
grounds, alleging that Murl’s conduct caused “emotional and physical
sickness” and “permanently scarred [T.B.] emotionally.” (R. at 20.) At
the time of the molestation, the Dobsons owned a homeowner’s insurance
policy issued by State Farm. The policy provided for personal liability
coverage according to the following terms:
 SECTION II – LIABILITY COVERAGES

 COVERAGE L - PERSONAL LIABILITY

 If a claim is made or a suit is brought against an insured for damages
 because of bodily injury or property damage to which this coverage
 applies, caused by an occurrence, we will:

 1. pay up to our limit of liability for the damages for which the
 insured is legally liable; and

 2. provide a defense at our expense by counsel of our choice. We may
 make any investigation and settle any claim or suit that we decide is
 appropriate. Our obligation to defend any claim or suit ends when the
 amount we pay for damages, to effect settlement or satisfy a judgment
 resulting from the occurrence, equals our limit of liability.
 ...
(R. at 279-80.) The policy also included the following relevant
exclusions:
 SECTION II - EXCLUSIONS
 1. Coverage L and Coverage M do not apply to:

 ...

 (i) any claim made or suit brought against any
 insured by:

 1) any person who is in the care of any insured
 because of child care services provided by or at
 the direction of:
 a) any insured;
 b) any employee of any insured; or
 c) any other person actually or apparently
 acting on behalf of any insured; or
 2) any person who makes a claim because of
 bodily injury to any person who is in the care of any insured
 because of child care services provided by or at the direction
 of:
 (a) any insured;
 (b) any employee of any insured; or
 (c) any other person actually or apparently
 acting on behalf of any insured.

 This exclusion does not apply to the occasional child care services
 provided by any insured . . . .

(R. 280-81.)

 State Farm received notice of the lawsuit on May 8, 1997, in a letter
sent by T.B. dated April 30, 1996. State Farm responded six days later
with two letters, one acknowledging receipt of T.B.’s letter and explaining
that an investigation was underway, and another addressed to the Dobsons.
In the Dobson letter, State Farm questioned its obligation to defend or
indemnify the Dobsons and reserved the right to deny coverage if a claim
arose out of childcare services provided by the insured.

 After receiving a copy of T.B.’s complaint, State Farm took
statements from the Dobsons. It later advised them to procure legal
representation at their own expense, explaining that previous cases similar
to the Dobsons’ were found not to be covered by the policy. State Farm
subsequently denied coverage to the Dobsons, saying: “After a thorough
investigation of the Complaint against [the Dobsons] we have concluded that
the allegations against Murl Dobson do not involve an occurrence as defined
by the policy.” (R. at 902.) State Farm’s letter also observed that “Murl
and Vicki Dobson were providing full-time childcare services for many
children and have done so for many years.” (R. at 904.)

 On November 5, 1997, T.B. and the Dobsons tendered an offer of
judgment and covenant agreement which the trial court accepted. The
Dobsons agreed to assign to T.B. all rights, interests and remedies against
State Farm arising from their homeowner’s policy. The agreement also
provided for a money judgment of $375,000, conditioned upon T.B.’s promise
not to execute on the Dobson’s personal assets.

 About a month after entry of judgment, T.B. filed a verified motion
for proceedings supplemental and garnishment against State Farm. State
Farm and T.B. filed cross motions for summary judgment. The trial court
granted summary judgment to T.B., and State Farm appealed. The Court of
Appeals affirmed the summary judgment, though it reduced the award amount
to the policy limit, which was $300,000. State Farm Fire & Cas. Co. v.
T.B. ex rel. Bruce, 728 N.E.2d 919 (Ind. Ct. App. 2000). We grant
transfer.

 Summary Judgment Standard of Review

 Summary judgment is proper if the evidence shows there is no genuine
issue of material fact and the moving party is entitled to a judgment as a
matter of law. Ind. Trial Rule 56(C); Butler v. Peru, 733 N.E.2d 912 (Ind.
2000). The courts construe all facts and reasonable inferences drawn from
those facts in a light most favorable to the nonmoving party. Butler, 733
N.E.2d at 915. On appeal the nonmovant has the burden of proving that the
grant of summary judgment was erroneous, but we review the trial court’s
decision carefully to ensure that the nonmovant was not improperly denied
his day in court. Ind. Dept. of Envtl. Mgmt. v. Med. Disposal Servs.,
Inc., 729 N.E.2d 577 (Ind. 2000).

 I. Collateral Estoppel

 State Farm first asserts that summary judgment in T.B.’s favor was
inappropriate because the trial court improperly estopped State Farm from
raising the childcare exclusion as a defense in the garnishment proceeding.
 State Farm specifically argues that it should not be bound by factual
statements contained in T.B.’s consent judgment that were not necessary to
the resolution of the underlying action.

 A. To Defend or Not to Defend. Collateral estoppel, also referred to
as “issue preclusion,” describes the binding effect of a previous judgment
regarding a particular issue on the parties and their privies in a
subsequent action. Liberty Mut. Ins. Co. v. Metzler, 586 N.E.2d 897, 900
(Ind. Ct. App. 1992). “The doctrine of collateral estoppel applies to
insurance contracts and an insurer is ordinarily bound by the result of
litigation to which its insured is a party, so long as the insurer had
notice and opportunity to control the proceedings.” Id. (citations
omitted).

 An insurer may avoid the effects of collateral estoppel by: (1)
defending the insured under a reservation of rights in the underlying tort
action, or (2) filing a declaratory judgment action for a judicial
determination of its obligations under the policy. Id. at 902 (citing
State Farm Mut. Auto. Ins. Co. v. Glasgow, 478 N.E.2d 918 (Ind. Ct. App.
1985)). Either of these actions will preserve an insurer’s right to later
challenge a determination made in the prior action.

 An insurer may also elect not to defend an insured party in a lawsuit
if, after investigation of the complaint, the insurer concludes that the
claim is “patently outside the risks covered by the policy.” Id. at 901
(citations omitted). Such a course is taken at the insurer’s peril because
the insurer will be “bound at least to the matters necessarily determined
in the lawsuit.” Frankenmuth Mut. Ins. Co. v. Williams, 645 N.E.2d 605,
608 (Ind. 1995)(citation omitted)(emphasis added).

 State Farm received notice of T.B’s complaint against the Dobsons and
promptly investigated. State Farm subsequently decided not to defend the
Dobsons and “concluded the allegations against Murl Dobson do not involve
an occurrence as defined by the policy.” (R. at 902.) Neither did State
Farm file for declaratory judgment. Consequently, State Farm is bound to
the matters necessarily determined in the lawsuit.

 B. Matters Necessarily Determined. State Farm concedes that
collateral estoppel prevents it from disputing certain findings necessary
to establish the Dobsons’ liability, such as the finding that the
molestation was negligent. State Farm challenges, however, factual
statements included in the consent judgment establishing that the child’s
injury was unrelated to daycare activities. It says this finding was “not
a necessary element of the consent judgment.” (Appellant’s Br. at 13.)
State Farm observes that T.B. and the Dobsons “characterize[d] the events
in a very specific manner, with the obvious intent of seeking to bring the
judgment within the coverage of the policy.” (Id.)

 The offered judgment, tendered by T.B. and the Dobsons and entered by
the trial court, indicated:

 The [Dobsons] represent that the occurrence of misfeasance . . .
 proximately resulting in serious bodily injury and harm to [T.B.] was
 separate from, independent of, and had no direct or indirect factual
 or legal connection or relationship to Vicki L. Dobson’s separate and
 sole ownership and operation of her limited, part-time child care
 activities and services. The existence of said day care activities
 and services is only an independent and coincidental circumstance
 which does not give rise to any breach of duty or legal responsibility
 as relevant to the occurrence and injuries described herein.

(R. at 84-85.) We agree with State Farm that these characterizations were
unnecessary to sustain T.B.’s complaint for damages regarding negligence
and premises liability. (See R. at 20-21.) The statement’s apparent sole
purpose was to isolate the molestation from the childcare activities.

 In Frankenmuth, 645 N.E.2d at 608, we explained that an insurer having
sufficient notice of the lawsuit is “bound at least to matters necessarily
determined in the lawsuit” when the insurer declines to defend or seek
declaratory judgment. The term “at least” in the holding signifies only a
minimum requirement. Frankenmuth, therefore, left some question of whether
an insurer is bound as to matters not “necessarily determined.”
Consideration of the requirement that adequate notice precede application
of collateral estoppel persuades us not to broaden the portions of a
consent agreement to which an insurer is bound.

 The notice requirement provides the insurer with a base of information
from which to determine whether to participate in a lawsuit. Specifically,
prior notice alerts an insurer of the factual determinations that will be
made in order to resolve the litigation. Thus, an insurer’s failure to
participate in the action will bind it to those determinations.
Unnecessary determinations are less predictable. Estopping an absent party
from contesting unnecessary matters settled upon by the consenting parties
invites collusive or fraudulent determinations.

 T.B.’s lawsuit against the Dobsons claimed personal and premises
liability. The portions of the consent agreement that resolved these
issues are binding on State Farm.

 T.B.’s claim did not specifically address State Farm’s contractual
obligations under the Dobsons’ homeowner’s policy. The consent agreement,
nevertheless, did. The statement that T.B.’s molestation was separate from
Vicki Dobson’s daycare services was unnecessary to resolve T.B.’s
complaint. It was thus tantamount to dictum, and State Farm should not
have been estopped from challenging it during proceedings supplemental.

 C. Issues of Material Fact. Without contesting the consent
agreement’s determination that T.B. was a “guest” in the Dobsons’ home on
the day she was molested, State Farm asserts that T.B. was receiving child
care from the insured, a condition excluded from the Dobsons’ personal
liability coverage.[1] The policy states that coverage does not apply to
“any person who is in the care of any insured because of child care
services provided by or at the direction of: (a) any insured.” (R. at
280.) State Farm argues that the consent agreement is ambiguous and that
“[t]he use of the term ‘guest’ is not inconsistent with a finding that
[T.B.] was present as the recipient of paid childcare services provided by
Vicki Dobson.” (Appellant’s Br. at 13 n. 3.)

 Relying on the consent agreement’s use of the term “guest,” T.B.
argues that the issue of her legal status on the premises has been
determined and that State Farm is precluded from relitigating the
matter.[2] (Appellee’s Br. at 21-22.)

 The term “guest” was not defined in the consent agreement. We agree
with State Farm’s contention that the term “guest” is an ambiguous
description of a person’s status with regard to premises liability. In
Burrell v. Meads, 569 N.E.2d 637, 643 (Ind. 1991), we described the
position of the social visitor as “anomalous” and noted Professor Fleming
James’ description of the guest as “an invitee who is not an invitee.”

 In Burrell we discussed the traditional categories of visitors
entitled to an “invitee” status: the public invitee and the business
visitor.[3] Id. at 640-41. We added the social guest to this class. Id.
at 643. Each of these categories is distinguished by whether it involves a
public, business or social aspect. A description stating only that a
person is an invitee, visitor or guest omits the relevant portion of the
label, i.e., public, business or social. Consequently, the consent
agreement’s determination that T.B. was a “guest” does not preclude a
finding that she was present in the home for a business activity, i.e.,
daycare.

 Summary judgment for either party is unsustainable with regard to the
childcare exclusion.

 Vicki Dobson operated a daycare in her home for several years, and
T.B.’s mother paid Vicki Dobson to care for her daughter over a period of
years. Drawing all facts and reasonable inferences in favor of State Farm,
it appears as though T.B. was in the Dobsons’ home for the sole purpose of
benefiting from childcare services. Accordingly, we reverse the trial
court’s grant of summary judgment for T.B. as to the childcare exclusion.
The trial court should take evidence on this question and rule on the
merits.

 T.B. argues that even if State Farm raises the childcare exclusion as
a defense, summary judgment is still appropriate because an exception to
the exclusion applies. The Dobsons’ policy provides that the childcare
exclusion “does not apply to the occasional childcare services provided by
any insured.” (R. at 281.)

 T.B. concedes that “Vicki did routinely provide childcare services to
[T.B.] before and after school and during the summer. . . .” (Appellant’s
Br. at 36.) She explains that Vicki did not usually care for her during
the day, except on days that T.B. was sick. (R. at 464.) This was the
circumstance on the day that Murl molested T.B. Based on these facts, T.B.
argues that Vicki’s care at that time was occasional. (Appellant’s Br. at
36.) T.B. additionally states that she was not in Vicki’s care at the time
of the incident because Vicki left the home to attend to her mother-in-law
across the street. (R. at 471.) She claims that she was actually left in
Murl’s care. She argues that his care was occasional because “Vicki, not
Murl, was paid for caring for [T.B.].” (Appellant’s Br. at 37; R. at 483.)

 There is a genuine issue of material fact as to whether T.B.’s care
was occasional, such that the occasional care exception to the child care
exclusion would apply. Because summary judgment was inappropriate for this
issue, we direct a trial on the merits for this question as well.

 II. Damages Award

 State Farm next argues that grant of summary judgment in favor of T.B.
was improper because the trial court erroneously accepted an award greater
than allowed by the Dobsons’ homeowner’s policy. The Court of Appeals held
that the insurer’s liability was limited to $300,000. State Farm Fire &
Cas. Co., 728 N.E.2d at 919. We summarily affirm their decision on this
point. Ind. Appellate Rule 58(A)(2).

 Conclusion

 We reverse the trial court’s grant of summary judgment and remand for
a hearing on the merits of the childcare exclusion and occasional care
exception.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.
-----------------------
[1] The consent agreement states that “on April 4, 1996, the Plaintiff
[T.B.], a 10 year old minor, was present as a guest at the residence of
Murl L. Dobson and Vicki L. Dobson.” (R. at 81.)
[2] As earlier mentioned, the consent agreement also stated that the
malfeasance was unrelated to Vicki Dobson’s daycare activities. Because we
have determined that this statement was not necessary to resolve the
liability claim, we will not again address the statement here.
[3] The Restatement (Second) of Torts § 332 defines the public invitee as
“a person who is invited to enter or remain on land as a member of the
public for a purpose for which the land is held open to the public.” The
Restatement defines a business visitor as “a person who is invited to enter
or remain on land for a purpose directly or indirectly connected with
business dealings with the possessor of the land.” Id.