**T.B., a minor by her parents and next friends, George BRUCE and Cathy Bruce, Appellant–Plaintiff,**

v.

**Murl L. DOBSON and Vicki L. Dobson, Appellees– Defendants,**

and

**State Farm Fire & Casualty Company, Appellee–Garnishee Defendant.**

No. 53A04–0609–CV–533.

Court of Appeals of Indiana.

June 22, 2007.

Rehearing Denied Aug. 14, 2007.

---

## OPINION

CRONE, Judge.

### Case Summary

T.B., a minor, by her parents and next friends, George Bruce and Cathy Bruce, appeal the trial court's judgment in favor of State Farm Fire & Casualty Company ("State Farm"). We affirm.

### Issues

We restate the issues as follows:

I. Whether the homeowner's insurance policy issued by State Farm to Murl L. Dobson and Vicki L. Dobson excludes coverage for Murl's molestation of T.B.; and

II. Whether State Farm impliedly waived the exclusion as an affirmative defense.

### Facts and Procedural History

The facts most favorable to the trial court's judgment indicate that Vicki operated a daycare center in her Bloomington home five days a week for approximately twenty-five years. Vicki provided child care services for T.B. for nearly ten years. Vicki routinely provided child care services to T.B. before and after school and during the summer. On April 4, 1996, ten-year-old T.B. was too sick to attend school and stayed all day at the Dobsons' home. At some point, Vicki left T.B. and three other children in Murl's care while she went across the street to care for her mother-in-law. During Vicki's absence, Murl molested T.B. At the time of the molestation, the Dobsons owned a homeowner's insurance policy issued by State Farm. The policy contained a child care exclusion, the particulars of which we address *infra.*

In May 1997, by her parents and next friends, T.B. sued the Dobsons on personal and premises liability grounds and notified State Farm of the lawsuit by letter. According to our supreme court,

> State Farm responded six days later with two letters, one acknowledging receipt of T.B.'s letter and explaining that an investigation was underway, and another addressed to the Dobsons. In the Dobson letter, State Farm questioned its obligation to defend or indemnify the Dobsons and reserved the right to deny coverage if a claim arose out of childcare services provided by the insured.

After receiving a copy of T.B.'s complaint, State Farm took statements from the Dobsons. It later advised them to procure legal representation at their own expense, explaining that previous cases similar to the Dobsons' were found

not to be covered by the policy. State Farm subsequently denied coverage to the Dobsons, saying: "After a thorough investigation of the Complaint against [the Dobsons] we have concluded that the allegations against Murl Dobson do not involve an occurrence as defined by the policy." State Farm's letter also observed that "Murl and Vicki Dobson were providing full-time childcare services for many children and have done so for many years."

On November 5, 1997, T.B. and the Dobsons tendered an offer of judgment and covenant agreement which the trial court accepted. The Dobsons agreed to assign to T.B. all rights, interests and remedies against State Farm arising from their homeowner's policy. The agreement also provided for a money judgment of $375,000, conditioned upon T.B.'s promise not to execute on the [Dobsons'] personal assets.

About a month after entry of judgment, T.B. filed a verified motion for proceedings supplemental and garnishment against State Farm. State Farm and T.B. filed cross motions for summary judgment. The trial court granted summary judgment to T.B., and State Farm appealed.

*State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce,* 762 N.E.2d 1227, 1229–30 (Ind. 2002) (*"Bruce II"*) (citations to record omitted) (final brackets added).

On appeal, another panel of this Court held that State Farm was collaterally estopped by the agreed judgment from asserting a child care exclusion defense in

the garnishment proceeding; that an exception to the policy's child care exclusion applied in any event; and that State Farm's liability was limited to the $300,000 policy limits plus postjudgment interest. *State Farm Fire & Cas. Co. v. T.B. ex rel Bruce,* 728 N.E.2d 919 (Ind.Ct.App.2000), *trans. granted* (2001) (*"Bruce I"*). State Farm petitioned for transfer, which our supreme court granted.

On transfer, the court held that the agreed judgment collaterally estopped State Farm from litigating whether the molestation was negligent but not whether the molestation was separate from Vicki's child care services.[1] *Bruce II,* 762 N.E.2d at 1231–32. The court further held that summary judgment was inappropriate for either party because genuine issues of material fact remained regarding the applicability of the policy's child care exclusion and the exception thereto. *Id.* at 1233. The court summarily affirmed this Court's determination of State Farm's liability limits and remanded for a hearing on the merits as to the child care exclusion and exception.

On remand, the parties filed cross-motions for summary judgment with designated evidence and supporting memoranda and agreed to consolidate a hearing on those motions with the remand hearing. The trial court held a consolidated hearing on May 5, 2006, at which the parties presented legal argument. On August 29, 2006, based solely on a paper record, the trial court issued findings of fact, conclusions thereon, and judgment on the merits

---

1. *See Bruce II,* 762 N.E.2d at 1232 ("T.B.'s lawsuit against the Dobsons claimed personal and premises liability. The portions of the consent agreement that resolved these issues are binding on State Farm. T.B.'s claim did not specifically address State Farm's contractual obligations under the Dobsons' homeowner's policy. The consent agreement, nevertheless, did. The statement that T.B.'s molestation was separate from Vicki Dobson's daycare services was unnecessary to resolve T.B.'s complaint. It was thus tantamount to dictum, and State Farm should not have been estopped from challenging it during proceedings supplemental.").

in favor of State Farm. The trial court denied both parties' summary judgment motions and determined, *inter alia*, (1) that the policy's child care exclusion and exception thereto are not ambiguous; (2) that the exclusion applies and that the exception does not, thereby denying coverage to the Dobsons; and (3) that, contrary to T.B.'s argument, State Farm did not waive the exclusion as an affirmative defense. T.B. now appeals.

## Discussion and Decision

### I. Applicability of Policy Exclusion

■ T.B. contends that the trial court erred in denying coverage to the Dobsons pursuant to the policy's child care exclusion. Because the trial court ruled on a paper record, and because the interpretation of a contract is a pure question of law, we employ a de novo standard of review. *See Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind.2006) (stating that paper records and contract interpretation issues are reviewed de novo).

■ The policy lists both Murl and Vicki as named insureds and reads in pertinent part as follows:

### SECTION II—LIABILITY COVERAGES

#### COVERAGE L—PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence,[2] we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

. . . .

### SECTION II—EXCLUSIONS

1. Coverage L . . . [does] not apply to:

 . . . .

 i. any claim made or suit brought against any insured by:

 (1) any person who is in the care of any insured because of child care services provided by or at the direction of:

 (a) any insured;

 (b) any employee of any insured; or

 (c) any other person actually or apparently acting on behalf of any insured; or

 (2) any person who makes a claim because of bodily injury to any person who is in the care of any insured because of child care services provided by or at the direction of:

---

**2.** The policy defines "occurrence" for purposes of this section as "an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damages; during the policy period." Appellant's App. at 484. As mentioned above, State Farm determined · that the allegations against Murl " '[did] not involve an occurrence as defined by the policy.' " *Bruce II,* 762 N.E.2d at 1231 (citation omitted). In *Bruce II,* however,

State Farm conceded "that collateral estoppel prevent[ed] it from disputing certain findings necessary to establish the Dobsons' liability, such as the finding that the molestation was negligent." *Id.* We take this to mean that State Farm conceded that it was estopped from disputing that Murl's molestation of T.B. was an "occurrence" as defined by the policy. Because neither party raises that issue in this appeal, we do not address it further.

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured.

This exclusion does not apply to the occasional child care services provided by any insured, or to the part-time child care services provided by any insured who is under 19 years of age[.]

. . . .

## SECTION II—CONDITIONS

. . . .

2. **Severability of Insurance.** This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

Appellant's App. at 496–500.

■■■ T.B. contends that the policy is ambiguous and should be interpreted in favor of the Dobsons to provide coverage. In addressing T.B.'s contention, we rely on the following established rules of policy interpretation:

As we do with other contracts, we interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as manifested in the insurance contract. Although some special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and the insured, if an insurance contract is clear and unambiguous, the language therein must be given its plain and ordinary meaning. Stated otherwise, we may not extend coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of that document.

*Gillespie v. GEICO Gen'l Ins. Co.,* 850 N.E.2d 913, 917 (Ind.Ct.App.2006) (citations and quotation marks omitted). "We construe the insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs." *Briles v. Wausau Ins. Cos.,* 858 N.E.2d 208, 213 (Ind.Ct. App.2006). "We must interpret the language of an insurance policy so as not to render any words, phrases, or terms ineffective or meaningless." *Vann v. United Farm Family Mut. Ins. Co.,* 790 N.E.2d 497, 502 (Ind.Ct.App.2003), *trans. denied.*

■■■ "The fact that parties disagree as to the interpretation of the policy does not establish an ambiguity." *Id.* "An ambiguity exists if the policy is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Great Lakes Chem. Corp. v. Int'l Surplus Lines Ins. Co.,* 638 N.E.2d 847, 850 (Ind.Ct.App.1994), *order on transfer vacated* (1998). If the policy language is ambiguous, "the policy should be construed in favor of the insured to further the policy's basic purpose of indemnity." *Id.; see also Vann,* 790 N.E.2d at 502 ("Any doubts as to coverage shall be construed against the insurer as the contact drafter.").

Generally, insurers are allowed to limit liability in any manner which is not inconsistent with public policy and an unambiguous exclusionary clause is ordinarily entitled to enforcement. However, exclusions, exceptions, and limitations must be plainly expressed in the policy and the exclusionary clause must bring within its scope the particular act or omission that will bring the exclusion into play.

*Hoosier Ins. Co. v. Audiology Found. of Am.,* 745 N.E.2d 300, 309 (Ind.Ct.App. 2001) (citation omitted), *trans. denied.*

Specifically, T.B. contends that the policy is ambiguous, in part, because the term "occasional" as used in the exception to the child care exclusion is undefined. Nevertheless, T.B. concedes that Vicki "generally provided more than occasional child care" and denies that "Murl's provision of child care services in the home [was] any more than occasional." Appellant's Reply Br. at 15, 16. T.B. also contends that the policy is ambiguous because the phrase "any insured" is used in both the exclusion and the exception and because the severability provision "conflicts with the phrase 'any insured' as used in the exclusion and creates ambiguity regarding how those provisions operate together in defining coverage under the policy." *Id.* at 27. Thus, T.B. asserts that

> one reasonable interpretation of the policy language from the insured's perspective is as follows: the policy provides general coverage as to personal liability for each insured; the child care exclusion takes away or excludes coverage for each insured separately when child care is provided by *any insured;* but the exception to the child care exclusion trumps the exclusion and gives back or provides coverage for each insured separately when only occasional child care is provided by *any insured.*

Appellant's Br. at 23.

Assuming, as does T.B., that Vicki provided more than "occasional" child care services to T.B., we conclude that the policy is not ambiguous and does not support the interpretation that T.B. urges. As for T.B.'s argument regarding the severability clause, we agree with the Superior Court of New Jersey, Appellate Division, that the purpose of such a clause is

> solely to render the coverage actually provided by the insuring provisions of the policy applicable to all insureds equally, up to coverage limits. The sev-

erability clause is not denominated a "coverage provision," and it would be unreasonable to find that it operated independently in that capacity to increase the insurance afforded under the insuring provisions of the policy, or to partially nullify existing coverage exclusions. "[T]he purpose of severability clauses is to spread protection, to the limits of coverage, among all of the . . . insureds. The purpose is not to negate bargained-for exclusions which are plainly worded."

*Argent v. Brady,* 386 N.J.Super. 343, 901 A.2d 419, 426–27 (App.Div.2006) (citation omitted).

T.B. contends that the exclusion and the exception in this case are not, in fact, "plainly worded." Although they are not models of clarity, a careful reading of the exclusion and the exception, in light of the facts as characterized by T.B., leads us to conclude that the Dobsons are not covered under the policy. To reiterate, the policy's personal liability coverage does not apply to

i. any claim made or suit brought against any insured by:

(1) any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured; or

(2) any person who makes a claim because of bodily injury to any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured.

This exclusion does not apply to the occasional child care services provided by any insured, or to the part-time child care services provided by any insured who is under 19 years of age[.]

Appellant's App. at 499.

It is now undisputed that Vicki provided non-occasional child care services to T.B. When T.B. was molested, she was in Murl's care because of non-occasional child care services provided by Vicki. As such, the coverage exclusion applies, and the exception to the exclusion does not. Our interpretation is buttressed by our supreme court's statement in *Bruce II* that "[t]here is a genuine issue of material fact as to whether T.B.'s care was occasional, such that the occasional care exception to the child care exclusion would apply." 762 N.E.2d at 1233.[3] As State Farm notes, "[s]ignificantly, the Indiana Supreme Court did not remand with instructions to determine if *Murl's* child care services were occasional, but whether *her* [i.e., T.B.'s] care was occasional." Appellee's Br. at 15. In sum, we affirm the trial court's determination that the Dobsons are not covered under the policy.

## II. Waiver of Exclusion as Affirmative Defense

 At issue in the proceedings prior to remand was whether State Farm was collaterally estopped by the agreed judgment from raising contractual defenses under the policy. T.B. states that "[s]ince the remand, [she] has asked the trial court,

and now this Court, to turn the tables and examine not the collateral estoppel effect of the Agreed Judgment on State Farm, but rather the other aspects of this controversy, including the legal effect that State Farm's own actions, inactions, and choices in the course of this litigation have on its ability to contend and rely upon the affirmative defense of forfeiture [i.e., the child care exclusion] at this late juncture." Appellant's Br. at 33–34 (citation omitted).

We note that T.B. raised this argument at a much later juncture. She could have done so in the proceedings that culminated in our supreme court's decision in *Bruce II*; having received a largely unfavorable ruling in that appeal, she switched theories and is attempting to take a second bite at the waiver/estoppel apple. It is tempting to find this argument procedurally defaulted. In any event, "[t]he law in this jurisdiction is well settled that where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend." *Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 146 (Ind.Ct.App.2006), *trans. denied.* We agree with the trial court that State Farm promptly and consistently opined that the Dobsons were not covered under the policy and that T.B. offers "no direct authority" for her position that the policy "should be interpreted to require [State Farm] to provide the [Dobsons] with a defense, or to take some action to preserve or judicially clarify their rights ... within a reasonable time or otherwise." Appellant's App. at 41. Consequently, we affirm.

Affirmed.

---

3. Notwithstanding the general language of the remand order at the conclusion of *Bruce II*, which is quoted by the dissent, we believe that the court's reasons for the remand appear to be quite specific.

SHARPNACK, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

It is my view that the policy taken as a whole, vis-à-vis the matter at issue, is ambiguous and is to be construed most favorably in favor of the insured. As noted in the majority opinion, any doubts as to coverage are construed against the insurer.

State Farm understandably takes the position that the Supreme Court's remand in *Bruce II* did not instruct the trial court "to determine if *Murl's* child care services were occasional, but whether [*T.B.'s*] care was occasional." Appellee's Br. at 15. This is certainly one construction to be placed upon the remand but the remand itself is not so crystal clear. It says simply that "We ... remand for a hearing on the merits of the childcare exclusion and occasional care exception." *Bruce II*, 762 N.E.2d at 1233–34. This phrasing could be construed to embrace both a determination as to the insured in whose care T.B. was at the time and whether, as to that insured, the care being given was occasional or not.

One reading of the child care exclusion applicable to "any insured" would seem to make it applicable if the child were in the care of "any insured," i.e. either Vicki *or* Murl. However, under a construction most favorable to the insureds in this instance, Murl as an "any insured" provided "occasional" care, and therefore the "child care" exclusion did not apply. Accordingly, the State Farm policy would provide coverage to Murl for the molesting incident although Vicki would be outside the coverage by reason of the exclusion.

This latter reasoning is consistent with the terminology of the severability provision. It states that the insurance "applies separately to each insured." Thus there would appear to be no prohibition within the policy itself against there being coverage as to one of the two insureds but not as to the other.[4]

In light of these considerations, I would reverse the decision of the trial court and remand for further proceedings not inconsistent with the views expressed herein.

4. One might pose the hypothetical question as to whether it would be possible for T.B. to be in the non-occasional care of Vicki, and at the same time, i.e., at the time of the molest, be in the occasional care of Murl. On the other hand, one might wonder whether being in the general overall and non-occasional care of Vicki at the time in question trumps what may have been the momentary actual physical care afforded by Murl at the time. In the latter event the application of the exclusion to Vicki would seem to carry with it the application of the exclusion to Murl so as to prevent any recovery by the Bruce under the policy. Despite the interesting but speculative questions, we need not decide those matters. Suffice it to say that such inquiries tend to place the policy in a posture of ambiguity.