**GRINNELL MUTUAL REINSURANCE COMPANY, Appellant–Garnishee Defendant/Counterclaim Plaintiff,**

**v.**

**Joe AULT and Edie L. Ault, individually and as parents and natural guardians of K.A., a minor, Appellees–Plaintiffs/Counterclaim Defendants.**

No. 25A03–0905–CV–205.

Court of Appeals of Indiana.

Dec. 17, 2009.

Ginny L. Peterson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorney for Appellant.

James H. Austen, Starr Austen & Miller, LLP, Logansport, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

Grinnell Mutual Reinsurance Company ("Grinnell") appeals the trial court's grant of the motion for summary judgment filed by Joe Ault and Edie Ault and the denial of its cross-motion for summary judgment. We reverse and remand with instructions to enter summary judgment for Grinnell.

The relevant facts most favorable to Grinnell as the party opposing the Aults' summary judgment motion indicate that in 1993, Kathleen King began operating her daycare business as a sole proprietorship out of the home she shared with her husband, Arthur King. Grinnell issued a farm and personal liability insurance policy to the Kings effective from August 29, 2003, to August 29, 2006 ("the Policy"). As amended by endorsement, the Policy reads in pertinent part as follows:

## DEFINITIONS USED THROUGHOUT THIS POLICY

The terms defined below appear in quotation marks (" ") throughout this policy:

1. "You" and "your" mean:

   a. the insured named in the Declarations and spouse if living in the same household;

   . . . .

2. "We," "us" and "our" mean the Company providing this insurance.

3. "Bodily injury" means bodily harm, sickness or disease and includes care, loss of services and resulting death. "Bodily injury" also includes mental or physical anguish, pain or suffering, but only if accompanied by physical symptoms of harm to the body of the person. Infliction of emotional distress, loss of society, or loss of consortium suffered by a spouse or a child is not a separate "bodily injury" under this policy and must be included in the claim of the person sustaining physical harm to the body.

4. a. "Business" means:

   1) any full or part time trade, profession, or occupation;

   2) incidental activities conducted by any "insured person" if gross receipts from the incidental activities are more than $2,000 in the prior or current calendar year; or

   3) the rental or holding for rental of any premises by any "insured person".

   . . . .

9. "Insured person" means:

   a. "you"

   b. a person living with "you" and related to "you" by blood, marriage or adoption;

   . . . .

## COVERAGES

### LIABILITY TO PUBLIC—COVERAGE A

"We" will pay subject to the liability limits shown for LIABILITY TO PUBLIC COVERAGE and the terms of the policy all sums arising out of any one loss which any "insured person" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" covered by this policy.

If a claim is made or suit is brought against any "insured person" for liability covered by this policy, "we" will defend the "insured person". "We" will use "our" lawyers and bear the expense.

HOWEVER, "WE" WILL NOT DEFEND ANY SUIT AFTER "OUR" LIMIT OF LIABILITY FOR THIS COVERAGE HAS BEEN PAID. "WE" WILL DEFEND OR SETTLE ONLY

IF COVERAGE EXISTS UNDER THE TERMS OF THIS POLICY.

"We" may investigate or settle any claim or suit as "we" think appropriate.

. . . .

## EXCLUSIONS

### UNDER ANY OF THE COVERAGES

. . . .

4. "We" do not cover "bodily injury" or "property damage" arising out of "business" activities of any "insured person" when the total gross receipts from the "business" activities exceed $2,000 in the prior or current calendar year.

. . . .

8. "We" do not cover "bodily injury" or "property damage" which results from an act committed by any "insured person";

  a. in the course of or in the furtherance of any:

  1) crime;

  2) offense of a violent nature;

  3) physical abuse; or

  b. if a reasonable person would expect or intend "bodily injury" or "property damage" to result from the act.

. . . .

25. "We" do not cover any "bodily injury" or mental or emotional injury arising out of any:

  a. Actual, alleged or threatened sexual molestation or sexual harassment of a person by any "insured", whether or not the "insured" intended to commit the act of sexual molestation or sexual harassment;

  b. Sexual act performed by any "insured";

  c. Physical abuse; or

  d. Corporal punishment.

. . . .

## RIGHTS AND DUTIES—CONDITIONS

1. Your Duties After a Loss

In case a covered accident occurs, the "insured person" must perform the following duties:

  a. notify "us" or "our" agent as soon as possible. The notice must give:

  1) "your" name and policy number;

  2) the time, place and circumstances of the accident; and

  3) the names and addresses of injured persons and witnesses;

  . . . .

  c. send "us" promptly any legal papers relating to any claim or suit.

. . . .

## GENERAL POLICY CONDITIONS

. . . .

9. **Policy Period**

  This policy applies to covered losses which occur during the policy period as shown in the Declarations, unless the policy has been canceled prior to the expiration of this policy period.

Appellant's App. at 327–43.

Beginning in the summer of 2000, Kathleen provided daycare services for the Aults' daughter, K.A., for $125 per week. In May 2004, the Aults stopped using Kathleen's services when allegations surfaced that Arthur had molested another female child in Kathleen's daycare.[1] Ulti-

---

1. Both parties cite to page 28 of Edie's deposition to support this statement of fact, but it appears that neither party specifically designated this page on summary judgment. Because this fact is undisputed, we do not address it further.

mately, Arthur was charged with and convicted of molesting K.A.

On June 7, 2006, in cause number 25D01–0606–CT–115, the Aults filed a two-count complaint for damages against the Kings that reads in pertinent part as follows:

5. During the time while K.A. was at the day care center, the Defendant, Arthur King, fondled and/or touched K.A. with intent to arouse his own sexual desires.

6. The Defendant, Kathleen King, knew, or in the exercise of reasonable care, should have known, that the Defendant, Arthur King, engaged in the fondling or touching of the Plaintiff, K.A.

7. The Defendant, Kathleen King, as the operator of a day care center, owed K.A. a duty to exercise reasonable caution to supervise the Plaintiff, K.A., and prevent her from being subject to molestation by the Defendant, Arthur King.

8. The Defendant, Kathleen King, negligently breached this duty proximately causing the Plaintiff, K.A., to suffer damages including, but not limited to, emotional distress and humiliation.

9. The Plaintiff, K.A., has been required to receive professional counseling services as a result of the foregoing facts and as a proximate result of the negligence of the Defendant, Kathleen King.

. . . .

11. As a proximate result of the negligence of the Defendant, Kathleen King, the Plaintiffs, Joe Ault and Edie L. Ault, Individually, have suffered emotional distress and humiliation.

*Id.* at 276–77. The Kings did not notify Grinnell of and did not request Grinnell to defend them in the lawsuit. On July 21, 2006, Arthur filed an answer in which he admitted to the allegation in paragraph 5 of the Aults' complaint. *Id.* at 55.

On September 8, 2006, the Aults' counsel sent a letter to the Kings' insurance agency informing it of the lawsuit. On October 20, 2006, the Aults' counsel faxed a copy of the complaint to Grinnell. On November 15, 2006, Grinnell informed the Kings that it would not defend or indemnify them in the lawsuit.

On January 10, 2008, the trial court approved an agreed judgment between the Aults and the Kings that reads in pertinent part as follows:

2. During the period of time that Kathleen King provided childcare services to the Plaintiff, K.A., a minor child, she was married to Art King.

3. While K.A. was in the care and custody of Kathleen King, Art King negligently touched K.A. in a manner which caused her to be injured.

4. Kathleen King negligently failed to supervise K.A. so as to prevent Art King's negligent touching of K.A.

5. As a proximate result of the negligence of Kings, Aults have suffered serious and substantial injuries.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that a judgment is hereby entered in favor of Aults and against Kings, and each of them, in the amount of $500,000.00.

*Id.* at 58–59. The Aults and the Kings also executed a settlement agreement and covenant not to execute. On January 15, 2008, judgment was entered against each of the Kings in the amount of $500,000 plus costs.

On January 23, 2008, the Aults filed a motion in proceedings supplemental, naming Grinnell as a garnishee defendant and asserting that under the terms of the Policy, "Grinnell is obligated to indemnify

Kings from the judgment in favor of Aults." *Id.* at 67. The Aults filed a motion for summary judgment, and Grinnell filed a counterclaim and a cross-motion for summary judgment.[2] After a hearing, the trial court granted the Aults' motion and denied Grinnell's cross-motion in an order that reads in pertinent part as follows:

1. Grinnell had notice of the filing of the action by [Aults] against the [Kings] but failed to afford Kings a defense and failed to file a declaratory judgment action to obtain a judicial determination of the lack of coverage under Grinnell's policy for [Aults'] claim against Kings.

2. By virtue of Grinnell's failure to provide a defense or file a declaratory judgment action, Grinnell is collaterally estopped from re-litigating the intent with which Arthur King touched K.A., [Aults'] minor child.

3. Accordingly, Grinnell's policy exclusions for sexual battery and intentional conduct do not apply to eliminate coverage for [Aults'] judgment against Kings.

4. While Grinnell remains entitled to litigate the issue of whether its business pursuits exclusion eliminates coverage in this case, the Court finds that the exclusion is ambiguous as to whether or not it requires Art King to be engaged in the rendering of childcare at the time he negligently touched K.A. or whether the mere fact that Art negligently touched K.A. at a time when childcare was being rendered by Kathleen King is sufficient to avoid coverage. Accordingly, the Court adopts that interpretation most favorable to [Aults], specifically that the business pursuits exclusion does not eliminate coverage unless Art King was

engaged in rendering childcare at the time he negligently touched K.A.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Grinnell's policy affords coverage for [Aults'] judgment against Kings and Grinnell is required to pay up to its policy limit the amount of the judgment. *Id.* at 49–50. This appeal ensued.

◼ Our standard of review in such cases is well settled:

Summary judgment is appropriate only where the designated evidentiary matter shows that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. When reviewing a grant of a motion for summary judgment, we stand in the shoes of the trial court. Once the moving party demonstrates, prima facie, that there are no genuine issues of material fact as to any determinative issue, the burden falls upon the non-moving party to come forward with contrary evidence. The non-moving party may not rest upon the pleadings but must instead set forth specific facts, using supporting materials contemplated under Trial Rule 56, which show the existence of a genuine issue for trial. The party appealing the grant of summary judgment bears the burden of persuading this court that the trial court erred, but we still carefully scrutinize the entry of summary judgment to ensure that the non-prevailing party was not denied its day in court. We do not weigh the evidence but rather consider the facts in the light most favorable to the nonmoving party. We may sustain the judgment upon any theory supported by the designated evidence. The trial court here entered specific findings

---

2. In August 2008, Grinnell agreed to consolidate cause number 25D01–0606–CT–115 with cause numbers 25D01–0807–CT–179 and 25D01–0607–CT–154. The nature of those causes is not readily apparent from the record before us.

of fact and conclusions thereon. Although such findings and conclusions facilitate appellate review by offering insight into the trial court's reasons for granting summary judgment, they do not alter our standard of review and are not binding upon this court.

*Auburn Cordage, Inc. v. Revocable Trust Agreement of Treadwell*, 848 N.E.2d 738, 747 (Ind.Ct.App.2006) (citations omitted). "[T]he fact that the parties have made cross-motions for summary judgment does not alter our standard of review. Rather, we consider each motion to determine whether the moving party is entitled to judgment as a matter of law." *Blasko v. Menard, Inc.*, 831 N.E.2d 271, 273 (Ind.Ct. App.2005) (citation omitted), *trans. denied* (2006).

The principal issue in this appeal is the scope of the coverage afforded by the Policy. As we explained in *Amerisure, Inc. v. Wurster Construction Co.*,

> The construction of an insurance policy is a question of law for which summary judgment is particularly appropriate. Insurance policies are contracts that are subject to the same rules of construction as are other contracts. When the language of an insurance contract is clear and unambiguous, we will assign to the language its plain and ordinary meaning. An insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability. Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract. Moreover, insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions. However, to be enforced, these limitations must be clearly expressed and must be consistent with public policy.

> An insurance contract will be deemed ambiguous only if reasonable people would honestly differ as to the meaning of its terms. However, an insurance contract is not regarded as ambiguous simply because controversy exists, and the parties have asserted contrary interpretations of the language of the contract.

818 N.E.2d 998, 1001–02 (Ind.Ct.App.2004) (citations omitted), *clarified on reh'g*, 822 N.E.2d 1115 (2005).

■■■ Additionally, we note that Indiana law is

> well settled that where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend. However, an insurer refusing to defend must protect its interest by either filing a declaratory judgment action for a judicial determination of its obligations under the policy or hire independent counsel and defend its insured under a reservation of rights. As we have indicated, an insurer can refuse to defend or clarify its obligation by means of a declaratory judgment action. If it refuses to defend it does so at its peril.

*Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 146 (Ind.Ct.App.2006) (citations, brackets, and quotation marks omitted), *trans. denied*. Nevertheless, an insurer's failure to defend an insured or seek a declaratory judgment does not waive its coverage defenses. *Tri–Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 1001 n. 2 (Ind.2009).

■■ Among other things, Grinnell contends that the trial court erroneously concluded that the Policy's business activities exclusion is ambiguous. To reiterate, the Policy excludes coverage for " 'bodily injury' or 'property damage' arising out of

'business' activities of any 'insured person' when the total gross receipts from the 'business' activities exceed $2,000 in the prior or current calendar year." Appellant's App. at 342.[3] It is undisputed that Kathleen King is an "insured person" under the Policy and that Kathleen's daycare business grossed over $2000 annually from the Aults alone. It is also undisputed that Arthur King touched and injured K.A. while she "was in the care and custody of Kathleen King[,]" who "negligently failed to supervise K.A." so as to prevent that touching. *Id.* at 487 (agreed judgment).

The question then becomes whether K.A.'s injuries "arose out of" Kathleen's daycare business activities. The Aults contend that this phrase is ambiguous [4] and further contend that the ambiguity should be construed against Grinnell. We disagree with both contentions. As for the latter, we note that, in general, "where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." *Am. Family Ins. Co. v. Globe Am. Cas. Co.*, 774 N.E.2d 932, 936 (Ind.Ct. App.2002) (quotation marks and brackets omitted), *trans. denied* (2003). "However, when a case involves a dispute between a third party and an insurer, as it does here, we determine the general intent of the contract from a neutral stance." *Id.*

As for the former, the Aults do not dispute that the phrase "arising out of" connotes a causal connection between an insured's business activities and a victim's injuries. The Aults argue that "[f]or a grown man to negligently touch or fondle a minor, it does not require that the two be involved in a business activity. Arthur King could have just as easily touched K.A. in another setting, or at another place." Appellees' Br. at 9. The fact remains, however, that Arthur touched K.A. while she was in his home solely as a ward of Kathleen's daycare business. We do not see how the causal connection between Kathleen's business activities and K.A.'s injuries could be any more direct. Therefore, we conclude that the Policy unambiguously excludes coverage for any "bodily injury" suffered by K.A. *Cf. Barga v. Ind. Farmers Mut. Ins. Group, Inc.*, 687 N.E.2d 575, 576–78 (Ind.Ct.App.1997) (finding automobile liability policy provision excluding coverage for " 'bodily injury ... arising out of auto business operations' " ambiguous "because the phrase 'arising out of business operations' is unclear. It could be construed to mean 'any connection, however slight' to such operations; or 'used exclusively' in such operations; or something in between."), *trans. denied* (1998). We also conclude that the Policy unambiguously excludes coverage for any derivative injuries suffered by the Aults. *See* Appellant's App. at 327 (" 'Bodily injury' means *bodily harm*, sick-

---

**3.** In disputing whether the Policy's business activities exclusion is ambiguous, both parties mention the factually similar *T.B. ex rel. Bruce v. Dobson*, 868 N.E.2d 831 (Ind.Ct.App.2007), *trans. denied.* Because the exclusion in *Bruce* differs significantly from the exclusion in this case, however, we find *Bruce* inapposite.

**4.** The Aults did not raise this argument on summary judgment; rather, they argued that "Art King did not engage in the childcare business and therefore his activities cannot in

any way be considered to have arisen out of any business pursuit." Appellant's App. at 498. Grinnell's contention that the Aults have waived their appellate argument by failing to raise it before the trial court is well taken. *See, e.g., King v. Ebrens*, 804 N.E.2d 821, 826 (Ind.Ct.App.2004) ("It is well settled that arguments not presented to the trial court on summary judgment are waived on appeal."). Nevertheless, we exercise our discretion to address it on the merits.

ness or disease and includes care, loss of services and resulting death. 'Bodily injury' also includes mental or physical anguish, pain or suffering, *but only if accompanied by physical symptoms of harm to the body of the person.* Infliction of emotional distress, loss of society, or loss of consortium suffered by a spouse or a child *is not a separate 'bodily injury' under this policy and must be included in the claim of the person sustaining physical harm to the body."*) (emphases added). Therefore, we reverse and remand with instructions to enter summary judgment for Grinnell.

Because we decide Grinnell's appeal on this ground, we need not address the preclusive effect of the agreed judgment on other policy exclusions, such as for bodily injury resulting from a crime or arising out of sexual molestation committed by an insured. We would be remiss, however, if we failed to point out that when Grinnell was informed of the Aults' lawsuit against the Kings, the only facts of which it had notice were that Arthur had admitted that he had "fondled and/or touched K.A. with intent to arouse his own sexual desires[,]" i.e., that he had sexually molested K.A. *Id.* at 276. After Grinnell informed the Kings that it would not defend them in the lawsuit, counsel for the Aults and the Kings drafted the agreed judgment to state that Arthur had "negligently touched K.A." *Id.* at 59. Given Arthur's admission that he had intentionally touched K.A., it would have been patently unfair to bind Grinnell to this subsequent factual stipulation. *See State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce,* 762 N.E.2d 1227, 1231–32 (Ind. 2002) ("The doctrine of collateral estoppel applies to insurance contracts and an insurer is ordinarily bound by the result of litigation to which its insured is a party, so

long as the insurer had notice and opportunity to control the proceedings.... An insurer may ... elect not to defend an insured party in a lawsuit if, after investigation of the complaint, the insurer concludes that the claim is patently outside the risks covered by the policy. Such a course is taken at the insurer's peril because the insurer will be bound at least to the matters necessarily determined in the lawsuit.") (citations, emphases, and quotation marks omitted). In any event, we note that the Policy excludes coverage "whether or not the 'insured' intended to commit the act of sexual molestation[.]" Appellant's App. at 343.

As a final consideration, we agree with Grinnell that the Aults have never established that K.A.'s injuries occurred within the Policy period. Contrary to the Aults' suggestion, the fact that they withdrew K.A. from Kathleen's daycare in May 2004 in response to allegations of molestation is not dispositive of when K.A.'s injuries actually occurred.[5]

Reversed and remanded.

VAIDIK, J., concurs.

RILEY, J., concurs in result.

---

5. We find it curious that the Aults and the Kings failed to stipulate that Arthur's touching of K.A. occurred within the Policy period.

The absence of evidence on this crucial point alone would preclude summary judgment in favor of the Aults.