**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FINANCIAL MANAGEMENT ADVISORS,
LLC, FINANCIAL MANAGEMENT
ADVISORS, INC. and KENNETH D.
MALAMED,

       *Plaintiffs-Appellants,*

       v.

AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
COMPANY,

       *Defendant-Appellee.*

No. 06-55001

D.C. No.
CV 04-10463-
RSWL (MANx)

OPINION

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted
August 9, 2007—Pasadena, California

Filed November 5, 2007

Before: Alex Kozinski and Johnnie B. Rawlinson,
Circuit Judges, and Miriam Goldman Cedarbaum,*
Senior District Judge.

Opinion by Judge Cedarbaum

---

*The Honorable Miriam Goldman Cedarbaum, Senior U.S. District
Judge for the Southern District of New York, sitting by designation.

**COUNSEL**

David M. Roberts and Jenner C. Tseng, Roberts, Raspe & Blanton LLP, Los Angeles, California, for the plaintiffs-appellants.

Andrew J. Waxler and Gretchen S. Carner, Waxler, Carner, Weinreb, Brodsky LLP, El Segundo, California, for the defendant-appellee.

**OPINION**

CEDARBAUM, Senior District Judge:

  Financial Management Advisors, LLC and Financial Management Advisors, Inc. (collectively, "FMA") and Kenneth D. Malamed appeal from the district court's grant of summary judgment in favor of American International Specialty Lines

Insurance Company ("AISLIC"). For the reasons that follow, we reverse that summary judgment and remand for proceedings consistent with this opinion.

## Background

FMA is a firm that provides investment advice and portfolio management services. Malamed is FMA's President and Chief Investment Officer, and acts as the financial advisor to many of FMA's clients.

In May of 2002, FMA purchased from AISLIC an Investment Management Insurance Policy to cover claims made against the FMA Parties for "Wrongful Acts" in the rendering of, or failure to render, investment advisory services. A "Wrongful Act" is defined as "any breach of duty, neglect, error, misstatement, misleading statement, omission or other act wrongfully done or attempted by the Insured." The initial policy issued to FMA ("Policy I") covered the period from May 2, 2002 to May 2, 2003. In May of 2003, AISLIC issued a "renewal" policy ("Policy II") covering the period from May 2, 2003 to May 2, 2004. Each policy is subject to a $2 million limit of liability.

The dispute in this case arises from the effect of two provisions, one in each of the AISLIC policies. Endorsement No. 3 of Policy I provides:

> If written notice of a Claim has been given to the Insurer . . . then a claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is *the same as or related to any Wrongful Act* alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(emphasis added). Exclusion II(9) of Policy II excludes from coverage:

> [A]ny claim arising out of the facts alleged, or ***arising out of the same or related Wrongful Acts*** alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time.

(emphasis added). Pursuant to these provisions, a claim brought under Policy II that arises out of the same or related Wrongful Acts as a claim brought under Policy I will be treated as having been brought under Policy I, and will receive coverage only to the extent that the $2 million limit of Policy I was not exhausted by the earlier claim.

## The Sitrick and Steinman Claims

FMA and Malamed (collectively, the "FMA Parties") seek insurance coverage for two separate lawsuits brought against them by unrelated investors who received financial advice from Malamed.

The Sitricks are a family of investors who invested in traditional equities and fixed income products managed by FMA. In December of 2002, when the value of their investments began to decline, the Sitricks filed a lawsuit against the FMA Parties in Los Angeles Superior Court alleging, among other things: (1) that Malamed made certain misrepresentations in order to dissuade the Sitricks from liquidating their equity investments; and (2) that Malamed misrepresented the risk inherent in several Collateral Bond Obligation funds (CBOs)[1]

---

[1]CBOs are diversified portfolios of corporate bonds which are underwritten by an investment banking firm and managed by a fund manager. FMA managed several different CBOs, including CBO II, CBO III, and CBO IV. The Sitricks invested in all three.

managed by FMA in order to induce the Sitricks to invest in those funds. The FMA Parties tendered the Sitrick Claim to AISLIC for coverage, and AISLIC agreed to assume the defense. In May of 2004, the Sitricks and the FMA Parties reached a settlement which exhausted the $2 million coverage limitation of Policy I.

In February of 2004, FMA began settlement discussions with another of its clients, Mark Steinman. In June of 1999, relying on Malamed's advice, Steinman invested in the CBO II fund. When his investment declined materially, Steinman sought recovery on the ground that Malamed had misrepresented the riskiness of CBO II and, moreover, had placed Steinman's investment into a tranche of the fund different from and riskier than the tranche he had agreed to invest in. Thus, Steinman alleged not only that FMA and Malamed misled him, but also that they breached their agreement with him. After reviewing the pertinent materials and comparing the Steinman and Sitrick Claims, AISLIC preliminarily denied coverage for the Steinman Claim, on the ground that it arose out of the same Wrongful Acts as, or Wrongful Acts related to, those alleged by the Sitricks and thus would be treated as having been made under Policy I — the limits of which had been exhausted in settling the Sitrick Claim. In September of 2004, Steinman sued the FMA Parties. FMA urged AISLIC to reconsider its coverage position, and AISLIC issued a formal denial of coverage.

In November of 2004, FMA and Malamed sued AISLIC in Los Angeles Superior Court. The complaint alleged that AISLIC's denial of coverage constituted a breach of its contract obligations and that AISLIC had breached its implied covenant of good faith and fair dealing by failing to investigate and refusing to defend the Steinman Claim. After AISLIC removed the action to federal court, the FMA Parties moved for partial summary judgment on their breach of contract claim, and AISLIC cross-moved for summary judgment on all issues.

The district court denied the FMA Parties' motion and granted AISLIC's motion for summary judgment. The district court agreed with AISLIC that the Sitrick and Steinman Claims were "related" because both involved material misrepresentations made by the same financial advisor about the risk of investing in CBO II. Because the limits of Policy I had already been exhausted by the Sitrick Claim, the district judge held that AISLIC had no further obligation to defend or indemnify FMA or Malamed.

## Discussion

We review a district court's grant of summary judgment *de novo*. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 877 n.11 (9th Cir. 2006). Findings of fact are reviewed for clear error. *Metropolitan Life Ins. Co. v. Parker*, 436 F.3d 1109, 1113 (9th Cir. 2006). Conclusions of law are reviewed *de novo*. *Conestoga Servs. Corp. v. Exec. Risk Indem.*, 312 F.3d 976, 981 (9th Cir. 2002).

This case turns on whether the Sitrick and Steinman Claims "arise[ ] out of the same or related Wrongful Acts." We hold that they do not.

**[1]** The Sitricks and Steinman were unrelated investors, with unique investment objectives. They were advised at separate meetings on separate dates, according to their unique financial positions. Indeed, the investment packages ultimately recommended to and chosen by each client were different — the Sitricks invested in several CBO funds as well as various equities, while Steinman invested only in CBO II.

**[2]** More importantly, some of the Wrongful Acts alleged by the two clients were different. The district court focused solely on the allegations in the Sitrick and Steinman complaints relating to the investment vehicle common to both investors — CBO II. But a large part of the Sitricks' case against the FMA Parties was based on misrepresentations

concerning their equity investments — investments not made by Steinman. Even with respect to CBO II, the Sitricks and Steinman allege different wrongful conduct by Malamed and FMA. The Sitricks based their CBO claims largely on Malamed's failure to disclose certain significant information, including: (1) that FMA failed to maintain sufficient liability insurance; (2) that FMA had been stripped of its management duties with respect to the first CBO it managed; and (3) that Malamed and FMA stood to earn substantial fees on the CBO investments. Steinman's claim, by contrast, relies heavily on affirmative misrepresentations in written materials prepared by Prudential, the underwriter for the CBOs, and in a commitment letter confirming that Steinman's investment would be placed in a low risk, "senior" tranche of CBO II when in fact it was placed in a more junior, higher-risk tranche. The Sitricks' claims were not based on written materials.

[3] In *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insur. Co.*, 5 Cal. 4th 854 (1993), the Supreme Court of California defined the term "related" in a similar insurance policy. There, a general contractor sued his attorney for two failures to perfect the contractor's mechanic's lien on a single construction project. As a result of the attorney's malpractice, the contractor was unable to collect the money he was owed for the project. The attorney's professional liability insurance policy provided that "[t]wo or more claims arising out of a single act, error or omission or a series of related acts, errors or omissions shall be treated as a single claim." *Id.* at 857. The court held that the term "related" is broad enough to include "both logical and causal connections." *Id.* at 873. It went on to find that the contractor's two claims were logically related because they: (1) arose out of the same transaction, the collection of a debt; (2) arose as to the same client; (3) were committed by the same attorney; and (4) resulted in a single injury, the loss of the debt. *Id.*

[4] AISLIC contends that the Sitrick and Steinman Claims are logically related under the teaching of *Bay Cities*. But

unlike the contractor in *Bay Cities*, whose one attorney made two mistakes in the course of helping his client to reach a single goal (collection of a debt), the Sitricks and Steinman are separate clients with distinct goals. It was significant to the *Bay Cities* court that the attorney's two acts of malpractice caused a single injury, and that either act would have caused the same injury — the contractor was unable to collect payment for his work. "[W]hen two or more errors lead to the same injury, they are — for that very reason — 'related' under any fair and reasonable meaning of the word." *Bay Cities*, 5 Cal. 4th at 869. Steinman suffered a loss independent of the loss to the Sitricks, and sued separately for recovery of his separate loss.

**[5]** AISLIC relies on two cases decided under the laws of other states. Those cases do not require a different result. In both *Gregory v. Home Insurance Co.*, 876 F.2d 602 (7th Cir. 1989) and *Continental Casualty Co. v. Wendt*, 205 F.3d 1258 (11th Cir. 2000), the insured attorney committed a single wrong — he gave the same advice to several parties to promote a single investment. In this case, the Sitricks and Steinman complained of different Wrongful Acts. The Sitricks complained of various omissions and oral misrepresentations made in connection with many different investment vehicles, while Steinman complained about the FMA Parties' breach of a written agreement to put Steinman's investment in a less risky tranche of CBO II. We do not believe the term "related" was intended to bar recovery whenever two parties are advised to invest in the same fund. Nor are the Sitrick and Steinman Claims logically related simply because both claimants blamed the same financial advisor.

## Conclusion

**[6]** The district court erred in holding that the Sitrick and Steinman Claims are related within the meaning of the AIS-LIC insurance policies. For the foregoing reasons, we reverse

and remand to the district court for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**