**WELLPOINT, INC. (f/k/a Anthem, Inc.) and Anthem Insurance Companies, Inc., Appellants–Plaintiffs,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, et al., Appellees–Defendants.**

No. 49A05–1011–PL–670.

Court of Appeals of Indiana.

July 20, 2011.

Rehearing Denied Sept. 14, 2011.

Robert D. MacGill, Charles P. Edwards, Christian P. Jones, Mark D. Crandley, Barnes & Thornburg, LLP, Indianapolis, IN, Dan J. Hofmeister, Jr., Kevin D. Tessier, Reed Smith, LLP, Chicago, IL, Attorneys for Appellants.

Mary K. Reeder, Riley Bennett & Egloff, LLP, Indianapolis, IN, John E. Black, Jr. (pro hac vice), Jeffrey T. Shaw

(pro hac vice), Chicago, IL, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

This is an insurance coverage dispute between Anthem Insurance and one of its excess reinsurers, Twin City Fire Insurance Company. Anthem was sued by a group of physicians in Connecticut for improperly delaying or denying reimbursement for medical services. Thereafter, Twin City became one of Anthem's excess reinsurers. Anthem then became subject to a series of additional state and federal lawsuits alleging improper denial of reimbursement. Anthem sought defense and indemnification from its reinsurers for several of the latter claims. Twin City denied coverage, arguing that those suits "related back" to the claim preceding its policy period and thus were excluded from coverage. The trial court agreed and entered summary judgment in favor of Twin City. Anthem appeals. We conclude that none of the subject policy provisions operate to exclude coverage in the manner Twin City proposes. We reverse and remand.

### Facts and Procedural History

*A. Anthem's Reinsurance Arrangement*

Anthem set up a complex and multi-tiered arrangement to reinsure itself for error and omissions liability. The arrangement involved (a) a primary insurance policy which Anthem issued to itself, (b) a certificate of reinsurance on the primary policy issued by National Union Fire Insurance Company, (c) four excess insurance policies which Anthem issued to itself and which followed form to the primary policy, thereby incorporating the primary policy's terms and conditions, and (d) numerous certificates of reinsurance on the excess policies issued by a bevy of additional reinsurers, in which the reinsurers agreed to assume the rights, powers, privileges, duties, and obligations as insurers under Anthem's policies. All policies/certificates were effective from September 30, 1999, until September 30, 2002.

Anthem's primary and excess policies covered "claims made." As set forth in the primary policy:

THIS IS A CLAIMS–MADE POLICY. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.

Appellants' App. p. 1015.

Section 6 of the policies' general terms and conditions was titled "LIMIT OF LIABILITY" and stated in pertinent part:

If additional claims are subsequently made which arise out of the same Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts as Claims already made and reported to the Insurer, all such Claims, whenever made, shall be considered first made within the Policy Period or the Discovery Period in which the earliest Claim[ ] arising out of such Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts was first made and reported to the Insurer, and all such claims shall be subject to one such limit of liability.

*Id.* at 1022–23. And Section 8, titled "NOTICE/CLAIM REPORTING PROVISIONS," provided as follows:

(a) The Company or the Insureds shall, as a condition precedent to the obli-

gations of the Insurer under this policy, give written notice of a Claim made against an Insured as soon as practicable after the Named Corporation's risk manager or general counsel first becomes aware of the Claim but in all events no later than either:

(1) anytime during the Policy Period or during the Discovery Period (if applicable); or

(2) within 60 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim(s) is reported no later than 60 days after the date such Claim was first made against an insured.

(b) If written notice of a Claim has been given pursuant to Clause 8(a) above, then a Claim which is *subsequently made* against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

*Id.* at 1024 (emphasis added).

Among Anthem's original excess reinsurers was Reliance Insurance Company. Reliance occupied the third excess layer of Anthem's arrangement and agreed to provide up to $20 million in coverage. Twin City Fire Insurance Company initially was not one of Anthem's excess reinsurers.

### B. *Anthem is Sued*

In November 1999, Dr. Edward Collins and several other physicians filed a class action lawsuit in Connecticut state court against an Anthem subsidiary. The *Collins* plaintiffs alleged, among other things, that Anthem's subsidiary failed to timely and adequately reimburse for medical services. The plaintiffs set forth claims for breach of contract, conversion, tortious interference with business expectations, breach of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act, and violation of the Connecticut Unfair Insurance Practices Act.

Anthem reported *Collins* to National Union shortly after it was filed.

### C. *Twin City Becomes One of Anthem's Excess Reinsurers*

Reliance Insurance Company went bankrupt before the end of the coverage period, so in July 2000 Anthem cancelled its policy with Reliance and obtained new excess coverage from Twin City.

Twin City's coverage certificate is missing, but various documents—including Twin City's business records, correspondence from Anthem's broker, and a binder issued by Twin City to Anthem—indicate that Twin City agreed to provide coverage under the same terms as Reliance for a policy period beginning July 15, 2000, and ending September 30, 2002.

### D. *Anthem is Sued Some More*

Beginning in 2001, Anthem became subject to a series of over ten additional state and federal lawsuits alleging improper denial of reimbursement. Claims against Anthem were filed in February 2001, October 2001, April 2002, September 2002, May 2003, October 2003, November 2003, February 2004, and June 2004. Plaintiffs alleged in part that Anthem conspired with other managed-care organizations to deny, delay, and diminish payments to doctors. The suits set forth causes of action under the Racketeer Influence and Corrupt Organizations Act, claims for breach of contract, and violations of prompt-pay statutes. Many of the claims were consolidated into a multi-district litigation proceeding in United States Dis-

trict Court for the Southern District of Florida.

### E. Anthem Seeks Coverage from Its Reinsurers

Anthem ultimately brought this action seeking, among other things, coverage from its reinsurers for four of the latter claims. Twin City counterclaimed seeking declaration that it owed no coverage for the specified claims as well as eight others.

Twin City later moved for summary judgment, arguing that because *Collins* arose before Twin City's policy period, and because the remaining post–2000 claims "related back" to *Collins,* Twin City owed no coverage obligation.

The trial court agreed and entered summary judgment in favor of Twin City. The court found that (a) the initial *Collins* claim was made and reported before Twin City's coverage period, (b) Twin City became an Anthem excess reinsurer following the cancellation of Reliance's policy, (c) the remaining post–2000 claims both "related" to *Collins* pursuant to policy Section 6 and were "interrelated" with *Collins* pursuant to Section 8, and (d) accordingly, Twin City's policy excluded any and all coverage obligations for the post–2000 claims. Anthem appeals.[1]

### Discussion and Decision

Anthem raises several issues, but we find one dispositive: whether policy Sections 6 or 8 exclude Twin City's coverage obligations for the post–2000 claims.

### I. Standard of Review / Principles of Policy Construction

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1269 (Ind.2009). All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.,* 864 N.E.2d 1058, 1062 (Ind.2007).

Insurance contracts are governed by the same rules of construction as other contracts, and the proper interpretation of an insurance policy, even if it is ambiguous, is generally a question of law appropriate for summary judgment. *Liberty Ins. Corp. v. Ferguson Steel Co.,* 812 N.E.2d 228, 230 (Ind.Ct.App.2004). If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Eli Lilly Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985). An ambiguity does not exist simply because a controversy exists between the parties, each favoring an interpretation contrary to the other. *Linder v. Ticor Title Ins. Co. of Cal.,* 647 N.E.2d 37, 39 (Ind.Ct.App.1995). An insurance policy is ambiguous if reasonable people may honestly differ as to the meaning of the policy language. *Id.*

When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the contract. *Buckeye State Mut. Ins. Co. v. Carfield,* 914 N.E.2d 315, 318 (Ind.Ct.App. 2009), *trans. denied.* We construe the policy as a whole and consider all of its provisions and not just the individual words, phrases, or paragraphs. *Briles v. Wausau Ins. Cos.,* 858 N.E.2d 208, 213 (Ind.Ct.App. 2006). This Court has further stressed that when insurance policies are interpret-

---

1. We heard oral argument in this case on June 28, 2011. We appreciate the quality of

the arguments on both sides.

ed, exceptions, limitations, and exclusions to coverage must be plainly expressed. *Delaplane v. Francis,* 636 N.E.2d 169, 171 (Ind.Ct.App.1994), *trans. denied.*

## II. Whether Policy Sections 6 or 8 Exclude Coverage for Post–2000 Claims

Anthem and Twin City's excess reinsurance policy covers "claims made." Generally speaking, a claims-made policy "provides coverage for claims made during the policy period, regardless of when the events out of which the claim arose occurred." 7 Lee R. Russ, *Couch on Insurance* § 102:20 (3d ed.1997).

Nonetheless, the trial court invoked two policy provisions in finding that Twin City owed no coverage for the claims postdating the inception of its policy: Section 6's "LIMIT OF LIABILITY" and Section 8's "NOTICE/CLAIM REPORTING PROVISIONS."

### A. Section 6: "LIMIT OF LIABILITY"

■ As noted above, Section 6 of the policy's general terms and conditions is titled "LIMIT OF LIABILITY" and provides in part:

> If additional claims are subsequently made which arise out of the same Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts as Claims already made and reported to the Insurer, all such Claims, whenever made, shall be considered first made within the Policy Period or the Discovery Period in which the earliest Claim[ ] arising out of such Wrongful Act or series of continuous, repeated or interrelated Wrongful Acts was first made and reported to the Insurer, and all such claims shall be subject to one such limit of liability.

Section 6 is designed to cap the insurer's liability for multiple claims based on the same or interrelated wrongful acts by its insured. Section 6 protects the insurer from paying out excessively for the insured's continuous, repeated, or interrelated misbehavior. But the provision potentially helps the insured as well: while the insurer limits its total dollar-amount liability for multiple interrelated claims, the insured may benefit by receiving coverage for claims made beyond the expiration of the policy.

Section 6 appears to envisage the following sequence of events: The insured obtains a policy with the insurer. A claim is made against the insured during the policy period based on an alleged wrongful act. The insured reports the claim to the insurer during the policy period. After that first claim is made and reported, one or more claims are later made against the insured based on the same wrongful act or on wrongful acts interrelated with the first. The subsequent claims might be made and reported within the policy period, or they might be made and reported after the policy has expired. Either way, all such claims receive coverage, but the claim amounts are aggregated and subject to one liability limit. That basic situation might be depicted as follows:

If based on the same or interrelated wrongful acts, then all claims receive coverage under the policy, though subject to one limit of liability.

Section 6 also seems to envision the issuance of multiple, successive policies issued to the insured by a single insurer. The successive-policy scenario might look like this:

If based on the same or interrelated wrongful acts, then all claims receive coverage only under Policy 1, subject to Policy 1's limit of liability.

Under those circumstances, Section 6 becomes exclusionary as to successor policies but remains inclusionary as to the first. *Cf. Cont'l Cas. Co. v. Wendt*, 205 F.3d 1258, 1264 (11th Cir.2000). Put differently, all claims fall under the insurer's Policy 1 and are subject to Policy 1's limit of liability.

The bottom line is that Section 6 is *prospective in nature* and contemplates (a) initial coverage between an insured and insurer, (b) a first claim made and reported to that insurer during that coverage period, and (c) subsequent claims made and reported to that insurer down the road. And the intended outcome of Section 6 is that, if the subsequent claims are based on the same, repeated, or interrelated wrongdoing as the first, the insured receives coverage for all claims though subject to a single liability limit.

This case, on the other hand, involves a notably different timeline. *Collins*, the first claim against Anthem, was made and reported in 1999 before Twin City's coverage began. Anthem then obtained its policy with Twin City for a period beginning in July 2000, and additional claims were made against Anthem thereafter. Our facts look more like this:

TWIN CITY POLICY PERIOD

CLAIM 1 CLAIM 2 CLAIM 3 CLAIM 4 CLAIM 5

A plain reading of Section 6 reveals that it is not addressed to the present chronology, and contrary to the trial court's findings, is not intended to exclude coverage retrospectively based on claims preceding an insurer's relationship with the insured.

Conceivably, the parties could have drafted or modified Section 6 to have a retrospective, exclusionary effect. *Cf. ACE Am. Ins. Co. v. Ascend One Corp.,* 570 F.Supp.2d 789, 793 (D.Md.2008) (policy stated, "All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be one Claim, and such Claim shall be deemed to be first made on the date the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period."). They obviously declined to do so.

For these reasons we conclude that Section 6 is unambiguous and irrelevant as applied to the present dispute. Twin City so concedes. *See* Appellee's Br. p. 23.

### B. Section 8: "NOTICE/CLAIM REPORTING PROVISIONS"

 Section 8 of the policy's general terms and conditions is titled "NO-TICE/CLAIM REPORTING PROVISIONS" and provides as follows:

(a) The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice of a Claim made against an Insured as soon as practicable after the Named Corporation's risk manager or general counsel first becomes aware of the Claim but in all events no later than either:

(1) anytime during the Policy Period or during the Discovery Period (if applicable); or

(2) within 60 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim(s) is reported no later than 60 days after the date such Claim was first made against an insured.

(b) If written notice of a Claim has been given pursuant to Clause 8(a) above, then a Claim which is *subsequently made* against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(Emphasis added).

Section 8(a) requires the insured to notify the insurer promptly of the existence of a claim. The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding an

accident or loss. *Miller v. Dilts,* 463 N.E.2d 257, 265 (Ind.1984).

Section 8(b), meanwhile, provides that if timely notice of a claim is furnished pursuant to subsection 8(a), then the insured may receive coverage for any "subsequent" claims based on the same or related wrongful acts. Coverage is therefore potentially expanded beyond the duration of the policy. *See also FDIC v. Booth,* 82 F.3d 670, 678 (5th Cir.1996) ("[I]n claims-made policies, the notice requirement actually serves to aid the insured by extending claims-made coverage beyond the policy period.").

Section 8(b) appears to envision a similar timeline as Section 6. That is:

The upshot is that Section 8(b), like Section 6, is prospective in nature and contemplates (a) initial coverage between an insured and insurer, (b) notice of a first claim made to that insurer pursuant to Section 8(a), and (c) subsequent claims made and reported to that insurer in the future. And the outcome of Section 8(b) is that the insured receives coverage for the subsequent claims if based on wrongful acts related to the first.

Again this case involves a different chronology, in which the first claim against Anthem was made and reported before Twin City's policy period began. Once more, we find no basis to read Section 8(b) to exclude coverage retrospectively based on notice of claims preceding the inception of coverage.

Twin City suggests that it owes no coverage pursuant to Section 8(b) because it executed a policy with Anthem after the cancellation of Reliance's predecessor policy. From what we can gather, Twin City is attempting to superimpose the so-called "prior notice exclusion" onto Section 8(b). *Cf. Fin. Mgmt. Advisors, LLC v. Am. Int'l Specialty,* 506 F.3d 922, 924 (9th Cir.2007) (policy excluded "any claim arising out of the facts alleged, or arising out of the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time"); *Cox Commc'ns, Inc. v. Nat'l Union Fire Ins.,* 708 F.Supp.2d 1322, 1326–27 (N.D.Ga. 2010) (policy provided, "The insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured: ... alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time[.]"); 1 Susan J. Mil-

ler, *Miller's Standard Insurance Policies Annotated*, Commercial General Liability Miscellaneous Endorsement 150.H, at 446.8 (5th ed. 2010) ("This policy excludes from coverage any claim arising out of the facts alleged, or arising out of the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time."). Section 8(b), however, is not so worded and expresses no such exclusion. And as stated above, our rules of policy construction require coverage exclusions to be plainly expressed. *Delaplane*, 636 N.E.2d at 171.

■ Twin City also maintains that Section 8(b) precludes coverage because Anthem furnished notice of *Collins* to National Union pursuant to the primary reinsurance policy, so all subsequent related claims are deemed made at the time *Collins* was reported. We disagree that Anthem's notice of Collins to National Union permits "relation back" for Twin City. Anthem's reinsurance regime involves many different entities and seemingly intertwined policies, but the operative contract in this dispute is a single, separable excess policy between Anthem and Twin City which incorporates the terms of Section 8 by reference. Hence, Twin City is "the insurer" for purposes of Section 8's notice provisions, and the applicable notice would be that to Twin City. Since Twin City's policy was not in effect at the time of *Collins*, notice of *Collins* to Twin City could not be provided pursuant to Subsection 8(a). Accordingly, Subsection 8(b) takes no effect. *See also Cox Commc'ns*, 708 F.Supp.2d at 1326 ("Cox Communications could not report a claim under the 2002 policy before that policy was in effect. Therefore, coverage is not excluded

under the claims first made provision of the 2002 policy.").

For the reasons stated, we conclude that neither policy Section 6 nor Section 8 operates to preclude Twin City's coverage obligations by "relating back" the post–2000 claims to *Collins*. To the extent Twin City claims that coverage is excluded for any other reason or based on any other policy provisions, it relegates these assertions to footnotes in its appellate brief and provides no arguments in support thereof. *See* Appellee's Br. p. 18 n.9, 21 n.13. We therefore find these contentions waived on appeal. *See* Ind. Appellate Rules 46(A)(8), 46(B) (appellate arguments must be supported by cogent reasoning and citation to authorities, statutes, and appendix or record). We reverse the trial court's entry of summary judgment in favor of Twin City and remand for further proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, J., and MATHIAS, J., concur.